EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Marla Figueroa Pomales<br><br>Peticionaria | Certiorari<br><br>2007 TSPR 188<br><br>172 DPR _____ |

Número del Caso: CC-2007-290

Fecha: 30 de octubre de 2007

Tribunal de Apelaciones:

Región Judicial de Mayagüez-Aguadilla

Juez Ponente:

Hon. Carlos Soler Aquino

Oficina del Procurador General:

Lcda. Mariana D. Negrón Vargas
Subprocuradora General

Lcdo. Salvador J. Antonetti Stutts
Procurador General

Abogado de la Parte Recurrida:

Lcdo. José E. Moreno Babilonia

Materia:  Art. 109 del Código Penal y otros

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                         CC-2007-290     Certiorari

Marla Figueroa Pomales

    Peticionaria

Opinión del Tribunal emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 30 de octubre de 2007.

En el caso criminal que se ventila contra la Sra. Marla Figueroa Pomales tenemos que interpretar el Art. 109 del nuevo Código Penal que tipifica el delito de homicidio negligente y que dispone como modalidad agravada haber ocasionado la muerte al conducir un vehículo bajo los efectos de bebidas embriagantes. En específico, debemos resolver qué relación se le debe conferir al Art. 7.02 de la Ley de Vehículos y Tránsito, Ley Núm. 22 de 7 de enero de 2000, que prohíbe conducir con una concentración de alcohol en la sangre igual o mayor a 0.08 centésimas, al determinar la instrucción que corresponde ofrecer al Jurado en el proceso criminal seguido en contra de la señora Figueroa

Pomales, donde se le acusa de violar el Art. 109 del Código Penal por alegadamente haberle causado la muerte a varias personas dedicadas a las ventas ambulantes, mientras conducía un vehículo de motor bajo los efectos de bebidas embriagantes. Debe quedar claro, por tanto, que en esta ocasión no pretendemos definir ni establecer exhaustivamente los contornos del delito tipificado en el Art. 109 del nuevo Código Penal, sino determinar su relación –en el aspecto que nos concierne– con la Ley de Vehículos y Tránsito vigente.

## I

El caso de autos tiene su génesis en un trágico y lamentable accidente ocurrido el 17 de junio de 2006, ocasión en que tres (3) personas perdieron la vida y la de otras tantas, entre ellas, la señora Figueroa Pomales, peticionaria ante nos, cambió radicalmente. A base de esos hechos, se presentaron acusaciones contra la señora Figueroa Pomales imputándole tres (3) cargos por infracción al Art. 109 del Código Penal (homicidio negligente), 33 L.P.R.A. sec. 4737; un (1) cargo por infracción al Art. 7.06 de la Ley de Vehículos y Tránsito; cuatro (4) cargos por violación al Art. 5.07 de la misma ley y un (1) cargo por infracción al Art. 7.02 de ese estatuto.

En cuanto a los cargos por homicidio negligente se alegaron dos modalidades agravadas, a saber, haber ocasionado la muerte con claro menosprecio de la

seguridad de los demás y al conducir un vehículo de motor bajo los efectos de bebidas embriagantes. En particular, con respecto a la modalidad agravada que nos ocupa, se le imputó haberle ocasionado la muerte a los comerciantes Amador Rosario Cerezo, Hernán Corchado Feliciano y Edwin Armán Delgado mientras conducía un vehículo de motor bajo los efectos de bebidas embriagantes y conduciendo a una velocidad mayor a la permitida por ley, para ejercer el debido dominio y control del vehículo.

Determinada causa probable para acusar por los tres (3) cargos de homicidio negligente agravado, se celebró el juicio en su fondo ante un Jurado. En la última etapa del juicio, el Ministerio Público solicitó que, con respecto al cargo de homicidio negligente bajo el Art. 109 del Código Penal, se le instruyera al Jurado que "en Puerto Rico manejar un vehículo de motor bajo los efectos de bebidas embriagantes implica que una persona tenga un por ciento mayor a .08 centésimas del uno por ciento de alcohol en su sangre o aliento" y que esa definición fuera aplicada a todos los delitos ante la consideración del Jurado. En específico, propuso que se impartiera la siguiente instrucción:

> "Para establecer este cargo se tiene que demostrar:
>
> 1) que el acusado causó la muerte al perjudicado sin intención;
> 2) que el hecho fue realizado en la comisión o en el intento de operar un vehículo de motor teniendo una concentración de alcohol en la sangre de .08 o más;

3) que la concentración de alcohol en el acusado fue el resultado del consumo de bebidas embriagantes antes o durante el manejo o el intento de manejar un vehículo de motor".

Sin embargo, ante la negativa del tribunal de instancia de acoger la instrucción propuesta, el Ministerio Público –en reconsideración– propuso una nueva instrucción:

"Que el acusado manejaba o intentaba manejar un vehículo de motor, que el acusado mientras manejaba o intentaba manejar tenía una concentración de alcohol en la sangre mayor al .08%. Que la concentración de alcohol en la sangre, o aliento del acusado fue producto de consumir bebidas embriagantes antes o durante que se manejara un vehículo de motor [sic], y que conforme a esas definiciones una persona con un .08% o más causa la muerte a un perjudicado sin intención".

El tribunal *a quo* también rechazó esa instrucción y procedió a impartir la siguiente instrucción basada en los criterios subjetivos expuestos por este Tribunal en <u>Domínguez v. Great American Life Insurance Co. of P.R.</u>, 157 D.P.R. 690 (2002):

"La frase o terminología 'bajo los efectos de bebidas embriagantes' denota una disminución o pérdida de las facultades físicas y mentales del individuo, causada por la presencia de alcohol en el cuerpo.

Esto es, se requiere que la concentración de la sustancia alcohólica en el individuo sea tal que sus capacidades físicas, motoras y mentales se vean afectadas de manera que el funcionamiento del individuo sea uno distorsionado.

Una frase que indica que se 'está bajo los efectos de algo o alguien', intima la disminución o carencia total de control

sobre sí mismo, ya sea de las facultades físicas y/o mentales del individuo.

No es un porcentaje de alcohol específico, sino el efecto o incapacidad que genere sobre el individuo, su condición física, metabolismo, peso, tolerancia al alcohol si es hombre o mujer. La observancia de la forma y manera en que el vehículo era manejado, hasta la observación de la persona, luego de ser detenida por la policía, en cuanto a sus destrezas motoras y del lenguaje, hasta el olor, la vestimenta y su apariencia, el color de ojos, entre otros factores.

Corresponde al Ministerio Público probar que la acusada estaba bajo los efectos de bebidas embriagantes y su relación causal con el accidente.

Según les he explicado, en el delito de homicidio negligente grave no es necesaria la intención de matar. Lo que se penaliza en un acto criminal de esta naturaleza es la negligencia del acusado al ocasionar la muerte de otra al manejar un vehículo de motor bajo los efectos de bebidas embriagantes".

Inconforme con esa instrucción, el Ministerio Público solicitó la paralización del juicio y recurrió ante el Tribunal de Apelaciones. Dicho foro revocó el dictamen por entender que el Art. 7.02 de la Ley de Vehículos y Tránsito establece un por ciento que define lo que es "[estar] bajo los efectos de bebidas embriagantes". Por tanto, determinó que la instrucción que se le impartiera al Jurado con respecto al homicidio negligente en su modalidad agravada por haberse ocasionado la muerte al conducir un vehículo de motor bajo los efectos de bebidas embriagantes, debía incluir la definición establecida en la Ley de Vehículos y

Tránsito ya que ésa es la ley especial que define el concepto. Siendo así, revocó la Resolución recurrida en cuanto ésta hace formar parte de las instrucciones al Jurado el que, para probar que la acusada conducía bajo los efectos de bebidas alcohólicas, no es suficiente la prueba de alcohol y deben ser considerados, únicamente, los criterios establecidos en Domínguez Vargas v. Great American Life Insurance, *supra*.

De dicho dictamen recurre ante esta Curia la señora Figueroa Pomales aduciendo que el foro apelativo erró al revocar la determinación del Tribunal de Primera Instancia ya que –a su entender– la misma era correcta en derecho. Sostiene que, por el contrario, la instrucción propuesta por el Ministerio Público y avalada por dicho foro es contraria a derecho porque infringe el principio de legalidad y la prohibición de establecer delitos por analogía. En particular, aduce que las instrucciones propuestas por el fiscal tienen el efecto práctico de desatender la forma en que el legislador tipificó el delito de homicidio negligente agravado al conducir un vehículo de motor bajo los efectos de bebidas embriagantes y que se estaría creando por analogía un elemento constitutivo de agravante distinto al requerido en el Art. 109 del Código Penal.

Por su parte, en su comparecencia ante nos, el Procurador General modifica la posición anteriormente expuesta ante el Tribunal de Apelaciones y aclara que la

alusión a la Ley de Vehículos y Tránsito en la instrucción al Jurado no se hace con el fin de incorporar al delito tipificado en el Art. 109 del Código Penal una presunción irrefutable de embriaguez meramente con que se pruebe que la peticionaria tenía una concentración de alcohol en la sangre igual o mayor a 0.08%. Más bien, aduce que dicha normativa se traería como un factor más que le permitiría al Jurado inferir que la peticionaria estaba bajo los efectos de bebidas embriagantes, pero que ello no obligaría al Jurado a concluir que, en efecto, se encontraba en tales condiciones. A esos efectos, propone una instrucción distinta a la que presentó el Ministerio Público en el foro de instancia y a la que presentó él mismo ante el Tribunal de Apelaciones. En específico, propone que se imparta la siguiente instrucción:

> "Para hallar culpable al acusado ustedes tendrán que quedar convencidos más allá de duda razonable de que la acusada, al momento del accidente que causó la muerte de las víctimas, conducía el vehículo bajo los efectos de bebidas embriagantes y que el accidente se produjo como consecuencia del riesgo creado por ella al conducir en estado de embriaguez. Al determinar si la acusada conducía bajo los efectos de embriaguez, ustedes podrán tomar en consideración que la prueba de alcohol realizada a la acusada arrojó un resultado de .12% de concentración de alcohol en la sangre y que la ley establece que es ilegal que una persona conduzca un vehículo de motor con una concentración de alcohol en la sangre de .08% o más. Sin embargo, ustedes no están obligados a inferir que la acusada conducía en estado de embriaguez sólo por razón del resultado de la prueba de alcohol. Considerada toda la prueba, ante duda razonable sobre si la acusada conducía bajo los efectos de bebidas embriagantes al

> momento del accidente, deben absolverla del cargo de homicidio negligente. Igualmente, deben absolverla ante duda razonable sobre la relación causal entre el accidente y la conducción en estado de embriaguez".

Dado que es la primera vez que este Tribunal tiene que interpretar el Artículo 109 del nuevo Código Penal, decidimos expedir el recurso. Además, conscientes de la paralización del juicio, acortamos los términos correspondientes para que las partes sometieran sus respectivos alegatos. Contando con la comparecencia de las partes, procedemos a resolver con la rapidez y el cuidado que el caso amerita.

## II

Sabido es que en juicios ante Jurado se requiere que se impartan instrucciones sobre el derecho aplicable en términos entendibles para los ciudadanos que cumplen con esa obligación cívica de tanta importancia en nuestro sistema penal. _Pueblo v. Negrón Ayala_, res. el 1 de junio de 2007, 2007 TSPR 103. El acusado tiene derecho a que en esas instrucciones se le transmitan al Jurado todos los aspectos de derecho que, bajo cualquier teoría razonable, puedan estar presentes en las deliberaciones que tienen que llevar a cabo. _Pueblo v. Acevedo Estrada_, 150 D.P.R. 84 (2000). El tribunal tiene la responsabilidad de velar porque las instrucciones que se impartan sean correctas, claras, precisas y lógicas. _Pueblo v. Sánchez Molina_, 134 D.P.R. 577 (1993).

En este caso la controversia estriba, precisamente, en determinar la corrección, precisión y lógica de la instrucción que el juzgador de instancia se propone impartir a los miembros del Jurado con respecto al delito de homicidio negligente en la modalidad agravada basada en ocasionar la muerte al conducir un vehículo de motor bajo los efectos de bebidas embriagantes.

El referido delito está tipificado en el Art. 109 del Código Penal de 2004, el cual establece que:

> "Toda persona que ocasione la muerte a otra por negligencia incurrirá en delito menos grave, pero se le impondrá la pena de delito grave de cuarto grado. Cuando la muerte se ocasione al conducir un vehículo de motor bajo los efectos de bebidas embriagantes, sustancias controladas o con claro menosprecio a la seguridad de los demás; o al apuntar y disparar con un arma de fuego hacia un punto indeterminado, incurrirá en delito grave de tercer grado". 33 L.P.R.A. sec. 4737.

Vemos, pues, que la segunda oración del artículo que tipifica el homicidio negligente estableció una modalidad grave cuando la muerte se ocasiona en cualquiera de las siguientes circunstancias: (1) al conducir un vehículo de motor **bajo los efectos de bebidas embriagantes**, sustancias controladas o con claro menosprecio de la seguridad de los demás, o (2) al apuntar y disparar con un arma de fuego hacia un punto indeterminado. D. Nevares-Muñiz, _Nuevo Código Penal Comentado_, Instituto para el Desarrollo del Derecho, Primera Ed., Puerto Rico, 2005, pág. 148.

No obstante, ni el Código Penal derogado ni el nuevo Código Penal define lo que constituye "[estar] bajo los efectos de bebidas embriagantes". Por consiguiente, debemos analizar las normas de interpretación toda vez que ello es esencial para resolver la controversia del caso de autos en torno a si se le deben impartir instrucciones al Jurado sobre las disposiciones de la Ley de Vehículos y Tránsito. Ahora bien, debemos aclarar que –contrario a lo que aduce la peticionaria– ese ejercicio no conlleva una violación al principio de legalidad ni a la prohibición de analogías. Tales principios están recogidos en los artículos 2 y 3 del nuevo Código Penal y, en esencia, constituyen limitaciones de índole estatutaria al poder punitivo del Estado. L. Chiesa Aponte, Derecho Penal Sustantivo, Primera Ed., Publicaciones JTS, Puerto Rico, 2007, pág. 42.

En particular, el principio de legalidad prohíbe que se inste una acción penal por un hecho que no esté expresamente definido como delito y que se impongan penas o medidas de seguridad que la ley no establezca con anterioridad a los hechos. 33 L.P.R.A. sec. 4630. Por su parte, la prohibición de la analogía supone una prohibición a que se creen o impongan por analogía delitos, penas o medidas de seguridad. 33 L.P.R.A. sec. 4631. "Bajo la prohibición de la analogía, el juez está impedido de penalizar por un hecho no tipificado como delito por su semejanza con uno tipificado como tal; o

admitir un agravante o una gradación específica no enumerada, basándose en sus semejanzas con una enumerada; o imponer una pena no contemplada por la ley por su analogía con una prevista en la ley". D. Nevares-Muñiz, Derecho Penal Puertorriqueño Parte General, Instituto para el Desarrollo del Derecho, Inc., Primera Ed., Puerto Rico, 1983, pág. 63.

Evidentemente, este caso no implica la creación de un delito por analogía ni supone que se le apliquen a la peticionaria elementos o agravantes del delito que no estén expresamente establecidos en la ley. Todos los elementos del delito que se le imputa a la señora Figueroa Pomales han sido tipificados con anterioridad por el legislador, al igual que el agravante cuyo análisis nos ocupa: haber causado la muerte al conducir un vehículo de motor bajo los efectos de bebidas embriagantes. Lo que no hizo el legislador fue definir lo que es "[estar] bajo los efectos de bebidas embriagantes" en el contexto del Art. 109 del Código Penal. Precisamente, la ausencia de esa definición es lo que hace de esta controversia una de interpretación estatutaria[1], toda vez que debemos aplicar las normas de

---

[1] Nuestro ordenamiento no prohíbe que los tribunales interpreten la ley penal. Lo que está prohibido es la analogía. Para distinguir entre la interpretación y la analogía, debemos tener en mente que: "[l]a analogía lleva siempre una extensión de la ley, pero ella se distingue de la interpretación de esta índole, porque en ésta, aunque el intérprete se sirva de elementos sistemáticos, **el caso está previsto por los legisladores, incluso con palabras inadecuadas, mientras que en la**

hermenéutica para delimitar el concepto y, a base de ello, resolver qué instrucción corresponde ofrecer al respecto.

## III

De entrada, debemos tener presente que estamos ante un estatuto de carácter penal. En estos casos, es deseable que la propia Asamblea Legislativa sea la que defina lo que constituye la conducta delictiva penalizada. D. Nevares-Muñiz, <u>Derecho Penal Puertorriqueño</u>, *supra*, pág. 57. No obstante, en ausencia de una actuación legislativa expresa, este Tribunal debe aclarar el alcance de las leyes penales. En ese ejercicio, conviene tener en mente las disposiciones del Código Penal sobre esta materia, en específico, el artículo 13 que dispone lo siguiente:

> "Las palabras y frases **se interpretarán según el contexto y el significado sancionado por el uso común y corriente.** …Si el lenguaje empleado es susceptible de dos o más interpretaciones, **debe ser interpretado para adelantar los propósitos de este Código y del artículo particular objeto de interpretación**". (Énfasis suplido).

Evidentemente, la disposición transcrita requiere que interpretemos un estatuto conforme a la voluntad del legislador. De igual forma, en nuestra función como intérpretes de las leyes, debemos considerar la realidad

---

**aplicación analógica no ha sido contemplada aquella hipótesis por la ley.** […] **En la interpretación extensiva falta la expresión literal, pero no la voluntad de la ley, y en la analogía falta también la voluntad de ésta.**" (énfasis suplido). Nevares-Muñiz, <u>Derecho Penal Puertorriqueño</u>, *supra*, pág. 96 (citando a Jiménez de Asúa).

social de donde surgen y operan. Pueblo v. Sierra Rodríguez, 137 D.P.R. 903 (1995); Pueblo v. Arandes de Celis, 120 D.P.R. 530 (1988); Pacheco v. Vargas, 120 D.P.R. 404 (1988). En vista de ello, nuestra función se limita a considerar el contexto de sus términos y la interpretación de la intención legislativa. Nevares-Muñiz, Derecho Penal Puertorriqueño, supra, pág. 91.

Ahora bien, hemos reiterado que los estatutos penales deben ser interpretados restrictivamente en lo que desfavorezcan al acusado. Pueblo v. Sierra Rodríguez, supra; Pueblo v. Arandes de Celis, supra; Mari Bras v. Alcalde, 100 D.P.R. 506 (1972). Con ello se quiere evitar que se penalice a una persona por una conducta que ésta no podía entender razonablemente que estuviese proscrita. Pueblo v. Tribunal Superior, 81 D.P.R. 763 (1960). Además, la interpretación restrictiva impide que una persona quede sometida a un estatuto penal por meras deducciones, Mari Bras v. Alcalde, supra, o a base del derecho consuetudinario. L. Chiesa Aponte, supra, pág. 43.

La interpretación restrictiva cobra importancia cuando existen dudas sobre el alcance o sentido de una disposición penal. Pueblo v. Tribunal Superior, 101 D.P.R. 439 (1973); Mari Bras v. Alcalde, supra. No obstante, ello no requiere que le demos a un estatuto un significado más limitado al que usualmente tiene dentro de la realidad social. Tampoco requiere que debamos

hacer caso omiso a la evidente intención del legislador. Pueblo v. Sierra, *supra*; Pacheco Vargas v. Alcalde, *supra*; Pueblo v. Hernández, 118 D.P.R. 891 (1987). Es decir, ninguna regla de interpretación –ni siquiera la de interpretación restrictiva de los estatutos penales– debe derrotar el propósito que la legislación persigue. Véase Pueblo v. Mantilla Rodríguez, *supra*. Por ende, la interpretación restrictiva de la ley penal se hará sin menoscabo de la intención legislativa conocida o evidente. Pueblo v. De León Martínez, 132 D.P.R. 746 (1993).

En conclusión, constituye un "principio cardinal de hermenéutica que al lenguaje de una ley debe dársele la interpretación que valida el propósito que tuvo el legislador al aprobarla". Pacheco Rodríguez v. Alcalde, 120 D.P.R. 404 (1988); Rivera Maldonado v. Autoridad sobre Hogares, 87 D.P.R. 453 (1963). Siendo así, este Tribunal debe interpretar la ley tomando en consideración los fines que persigue y la política pública que la inspira. *Id*.

Con estos principios en mente, debemos auscultar la intención del legislador para determinar lo que constituye "[estar] bajo los efectos de bebidas embriagantes" en el contexto del Art. 109 del Código Penal vigente. Con ese objetivo, pasemos a examinar el historial legislativo de dicho estatuto.

**A**

Del historial legislativo del Código Penal, en específico, de los anejos al Informe presentado por la Comisión de lo Jurídico de la Cámara de Representantes[2], se desprende que el Art. 109 surge de una combinación y reformulación de los artículos 86 y 87 del derogado Código Penal. Por tanto, y en ausencia de otros detalles en el historial legislativo del nuevo Código Penal con respecto al Art. 109, debemos examinar la trayectoria de dichas disposiciones con el fin de interpretar el significado y alcance del estatuto vigente.

Téngase presente que en el mencionado Art. 87 constituía un delito incurrir en conducta crasa y temeraria que causara la muerte de un ser humano. Al interpretar dicha disposición, anteriormente señalamos que conducir un vehículo de motor en estado de embriaguez no constituía un elemento indispensable del delito, sino que con una alegación al respecto se podía establecer un "acto ilegal adicional" para probar que el acusado era culpable de imprudencia crasa o temeraria. Pueblo v. Vélez Pumarejo, 113 D.P.R. 349, 356 (1982).

Posteriormente el legislador fue más allá y dispuso expresamente, mediante enmienda introducida a través de la Ley Núm. 53 de 4 de enero de 2003, que se entendería como conducta crasa y temeraria, entre otras cosas, conducir un vehículo de motor **bajo los efectos de bebidas**

---

[2] Tabla de Concordancias y Antecedentes entre el Código Penal de 1974 y el Código [entonces] Propuesto.

**embriagantes**. En la Exposición de Motivos de dicha enmienda se dispuso que: "[d]urante los últimos cinco (5) años, **antes de la aprobación de la Ley Núm. 22 de 7 de enero de 2000, conocida como la Ley de Vehículos y Tránsito de Puerto Rico**, habían ocurrido en el Estado Libre Asociado de Puerto Rico un promedio anual de 191,856 accidentes de tránsito con un saldo de 55,150 heridos y 581 muertos. De las 581 muertes, el 38% resultó positivo a alcohol y **el 29% reflejó un contenido de alcohol en la sangre de un .10% o más, al momento del accidente**" (énfasis suplido).

En dicha Exposición de Motivos el legislador expresó, además, que el Código Penal en su Artículo 87 disponía que será considerado como delito grave ocasionar la muerte a un ser humano mediando imprudencia crasa o temeraria al conducir un vehículo de motor pero que, sin embargo, guardaba silencio en torno a si ocasionar la muerte a un ser humano al conducir un vehículo de motor <u>bajo los efectos del alcohol</u>, o sustancias controladas debía ser considerado como una conducta penable bajo dicha disposición.

Dado el silencio que dejó el Art. 87 entonces vigente para los casos en que la muerte era ocasionada cuando el vehículo era conducido bajo los efectos del alcohol, se indicó en la Exposición de Motivos que la Asamblea Legislativa entiende necesario crear legislación dirigida a salvaguardar la seguridad y el bienestar del

pueblo puertorriqueño en las carreteras del País.  Con ello en mente, se expresó que "[**e]s menester establecer claramente que el ocasionar la muerte a un ser humano al conducir un vehículo de motor bajo los efectos del alcohol, o sustancias controladas constituye imprudencia crasa y temeraria bajo el Artículo 87**" (énfasis suplido). Exposición de Motivos, Ley Núm. 53, *supra*.

Al promulgar otras medidas, el legislador también puso de manifiesto la relación existente entre la Ley de Vehículos y Tránsito y otras áreas del ordenamiento criminal.  Así, por ejemplo, mediante la Ley Núm. 50 de 9 de agosto de 1989 el legislador enmendó simultáneamente la Ley de Vehículos y Tránsito de 1960 y la Ley Núm. 259 de 3 de abril de 1946, mejor conocida como Ley de Sentencia Suspendida. Específicamente, mediante dicho estatuto se redujo el nivel de concentración de alcohol en la sangre necesario para activar la presunción de embriaguez establecida en la entonces vigente Ley de Vehículos y Tránsito, a la vez que se excluyó del beneficio de sentencia suspendida a las personas convictas de imprudencia crasa o temeraria al conducir un vehículo de motor en estado de embriaguez.

En la Exposición de Motivos de la referida Ley Núm. 50, *supra*, el legislador manifestó que las estadísticas recopiladas por la Comisión para la Seguridad en el Tránsito indican que el consumo de alcohol es un factor determinante en la causa de los accidentes.  En vista de

ello, expresó que **"[e]l propósito de esta ley es adoptar medidas que nos permitan sacar a los conductores ebrios de nuestras carreteras e imponer a éstos medidas que desalienten estos hábitos y faciliten su rehabilitación"** (énfasis suplido). Exposición de Motivos, Ley Núm. 50, *supra*.

Por otra parte, en una enmienda a la propia Ley de Vehículos y Tránsito introducida mediante la Ley Núm. 132 de 3 de junio de 2004, el legislador reafirmó claramente la política a favor de la seguridad pública y, de esta manera, se unió a un movimiento mundial para evitar las muertes en las carreteras ocasionadas por conductores en estado de embriaguez. A esos fines, expresó que "[e]l transitar con seguridad por las carreteras de un país es requisito básico del progreso económico, pero más aún, es indispensable para mantener la estabilidad social y emocional de la familia […]. El tránsito por las vías públicas tiene que operar con orden y en forma reglamentada; **la 'Ley de Vehículos y Tránsito de Puerto Rico' es el medio que la Legislatura del Estado Libre Asociado de Puerto Rico ha suministrado para lograr el control del conductor ebrio** o bajo los efectos de sustancias controladas…" (énfasis suplido). Exposición de Motivos, Ley Núm. 132, *supra*.

Mediante dicha enmienda a la Ley de Vehículos y Tránsito el legislador pretendió, además, revisar el proceso de **identificar a los que conducen vehículos de**

**motor bajo los efectos de bebidas alcohólicas** y sustancias controladas. Ello en vista de que para el año 2001, cuando entró en vigor la Ley Núm. 22, *supra*, la Policía reportó sobre catorce mil (14,000) intervenciones por conducir en estado de embriaguez, de las cuales **sobre doce mil (12,000) dieron resultados de más del ocho por ciento (8%) del nivel de alcohol en la sangre"**. Exposición de Motivos, Ley Núm. 132, *supra*.

De lo anterior surgen varias conclusiones. Primero, que al establecer y tipificar los delitos antecesores del delito de homicidio negligente, el legislador hizo referencia a las disposiciones de la Ley de Vehículos y Tránsito, toda vez que ésa es la legislación que establece las pautas con respecto al problema de la embriaguez en las carreteras del País. Al así hacerlo, le confirió especial importancia a los porcentajes de alcohol allí contemplados, con el fin de identificar los casos de conductores ebrios y los problemas causados por ellos. Es decir, de lo anterior queda claro que cuando el legislador decidió incorporar como modalidad del delito de imprudencia crasa o temeraria conducir un vehículo de motor bajo los efectos del alcohol, tuvo muy presente las disposiciones de la Ley de Vehículos y Tránsito; la política pública en ella promulgada e, incluso, el por ciento de alcohol que se encontró en gran parte de los conductores que se vieron involucrados en accidentes de tránsito, el cual constituía en aquel

entonces una presunción de estar bajo los efectos de bebidas embriagantes[3].

Al así legislar era evidente la preocupación por el problema de los accidentes causados por conductores en estado de embriaguez y la determinación de promover una vigorosa política pública para garantizar la seguridad en las carreteras del País. Asimismo, de allí surge que el legislador consideró las disposiciones de la Ley de Vehículos y Tránsito en distintos momentos con el fin de aplicar las normas sustantivas allí incorporadas a otras áreas del campo criminal. Incluso, queda claro que el legislador entendió que la Ley de Vehículos y Tránsito es el instrumento para identificar a los que conducen bajo los efectos de bebidas embriagantes y, en última instancia, para lograr el control del problema causado por éstos.

En vista de ello, no podemos ignorar lo dispuesto en la Ley de Vehículos y Tránsito al momento de interpretar lo que el legislador quiso decir con "[estar] bajo los efectos de bebidas embriagantes" al tipificar una de las modalidades agravadas del delito de homicidio negligente. Téngase presente que, conforme al análisis antes esbozado, no es mera causalidad que el legislador haya

---

[3] Como surge de <u>Pueblo v. Nazario Hernández</u>, 138 D.P.R. 760 (1995), el porcentaje de alcohol en la sangre ha sido un factor pertinente en casos donde se imputa violación al Art. 87 por haber conducido un vehículo de motor bajo los efectos del alcohol.

usado esa frase de forma idéntica a la terminología empleada en la Ley de Vehículos y Tránsito vigente.

**B**

La Ley de Vehículos y Tránsito de 2000 procuró, entre otras cosas, simplificar las gestiones gubernamentales en esta materia y minimizar la necesidad de intervención de las autoridades, mientras fortalecía las sanciones en cuanto a aquellas violaciones de ley que presenten grave riesgo a la seguridad pública. Exposición de Motivos, Ley Núm. 22, *supra.*

En lo pertinente al caso que nos ocupa, el Art. 7.01 de dicho estatuto dispone que representa la **posición oficial y política pública del gobierno de Puerto Rico, que el manejo de vehículos o vehículos de motor en las vías públicas bajo los efectos de bebidas embriagantes, drogas o sustancias controladas, constituye una amenaza de primer orden a la seguridad pública […]**"(énfasis suplido). 9 L.P.R.A. sec. 5201. A tenor con ello, se declara como ilegal que cualquier persona bajo los efectos de bebidas embriagantes, drogas o sustancias controladas conduzca o haga funcionar cualquier vehículo o vehículo de motor[…]. *Id*.

Por otra parte, el Art. 7.02 establece que en cualquier proceso criminal por infracción a lo dispuesto en el artículo mencionado, el nivel o concentración de alcohol existente en la sangre del conductor al tiempo en que se cometiera la alegada infracción, constituirá base

para lo siguiente: (a) **Es ilegal *per se*, que cualquier persona mayor de dieciocho (18) años de edad conduzca o haga funcionar un vehículo de motor, cuando su contenido de alcohol en la sangre sea de ocho (8) centésimas del uno (1) por ciento (.08%),** o más, según surja tal nivel o concentración del análisis químico o físico de su sangre, o de su aliento. 9 L.P.R.A. sec. 5202(a).

Ahora bien, conviene aclarar que la Ley de Vehículos y Tránsito no siempre ha tenido ese lenguaje. Antes de que se promulgara la Ley vigente en el año 2000, el estatuto no aludía a la concentración de alcohol en la sangre con el fin de establecer un delito *per se*, sino para establecer presunciones de embriaguez. A esos efectos, la Ley Núm. 141 de 20 de julio de 1960, que fuera derogada por la ley actual, disponía que en cualquier proceso por infracción al párrafo (a), el cual establecía la ilegalidad de conducir bajo los efectos de bebidas embriagantes, la cantidad de alcohol existente en la sangre del acusado al momento en que se cometiere la alegada infracción constituirá base para las siguientes **presunciones**: (1) Si al momento del análisis había en su sangre cinco (5) centésimas de uno (1) por ciento, o menos, de alcohol se presumirá que no estaba bajo los efectos de bebidas embriagantes; (2) Si a tal momento se hallare en su sangre más de cinco (5) centésimas de uno por ciento de alcohol pero menos de quince (15) centésimas, la prueba no constituirá base para presumir

que estaba o no bajo los efectos de bebidas embriagantes, pero podrá ser considerada con otra evidencia para determinar su culpabilidad o inocencia; (3) Si en tal momento había en su sangre quince (15) centésimas de uno (1) por ciento de alcohol, o más, se presumirá que estaba bajo los efectos de bebidas embriagantes. 1960 Leyes de Puerto Rico 425. Véase también la Ley Núm. 95 de 29 de junio de 1954[4].

El proyecto que desembocó en la ley actual también propuso inicialmente utilizar el nivel de alcohol en la sangre como presunción de embriaguez. Sin embargo, el legislador optó por eliminar las presunciones contenidas en la ley con respecto a los porcentajes de alcohol y, en su lugar, incorporó el lenguaje de "ilegal *per se*" para establecer concretamente la ilegalidad del acto de conducir un vehículo de motor cuando el contenido de alcohol en la sangre es de 0.08% o más. Véase Proyecto del Senado 637 de 12 de agosto de 1997.

---

[4] La Ley Núm. 95, *supra*, disponía que a los fines de la sección (a) constituirá evidencia **prima facie** de que el acusado no estaba intoxicado o bajo los efectos de bebidas embriagantes, prueba de que al momento del análisis había en su sangre 5/100 avas partes de un por ciento, o menos de alcohol; (b) constituirá prueba relevante pero no será evidencia *prima facie*, sobre si el acusado estaba o no intoxicado o bajo los efectos de bebidas embriagantes, el hecho de que en su sangre se halló más de 5/100 avas partes de un por ciento de alcohol pero menos de 15/100 avas partes; y (c) se admitirá como evidencia *prima facie* de que el acusado estaba intoxicado o bajo los efectos de bebidas embriagantes, el hecho de que al momento del análisis había en su sangre 15/100 avas partes de un por ciento, o más de alcohol. 1954 Leyes de Puerto Rico 993.

Por tanto, en el estatuto vigente el nivel o concentración de alcohol en la sangre no es meramente un elemento probatorio, sino que representa una norma a los efectos de que determinado por ciento de alcohol en la sangre es suficiente para concluir que la persona está, efectivamente, bajo los efectos del alcohol en violación de la Ley de Vehículos y Tránsito. Así surge, no sólo del texto del Art. 7.02 de la Ley, sino además de un análisis integral del estatuto.

Por ejemplo, nótese que el Art. 7.09 de la Ley de Vehículos y Tránsito establece que "[d]e resultar con una concentración menor a la indicada anteriormente,[…] se concluirá que la persona detenida o arrestada no estaba conduciendo o haciendo funcionar un vehículo bajo los efectos de bebidas embriagantes". 9 L.P.R.A. sec. 5209(f). No cabe duda que el legislador le confirió tal importancia a los porcentajes de alcohol en la sangre que, para efectos de ese estatuto, estableció que una cantidad de alcohol en la sangre menor a la prohibida en el Art. 7.02 supone que la persona, de hecho, no está bajo los efectos de bebidas embriagantes.

Por otra parte, subsiguientemente se establece que si luego de realizar las pruebas de alcohol, éstas reflejan que el conductor no estaba bajo los efectos de bebidas embriagantes y aún así diera indicios de estar intoxicado, el agente del orden público tendrá motivos para creer que se encuentra bajo los efectos de drogas o

sustancias controladas. *Id*. Ciertamente, ello significa que el legislador concibe que las pruebas de alcohol son capaces de establecer si una persona está bajo los efectos de bebidas embriagantes para propósitos de conducir un vehículo de motor.

A igual conclusión nos lleva el análisis del Art. 7.04(a) en cuanto dispone que a la persona que haya sido intervenida por violar los artículos 7.01, 7.02 y 7.03 no se le permitirá conducir y se le transportará hasta el cuartel más cercano, donde permanecerá hasta tanto el nivel de alcohol en la sangre sea menor del mínimo permitido por ley. 9 L.P.R.A. sec. 5204(a). De esta disposición se desprende que para el legislador el resultado de la prueba de alcohol en estos casos no sólo es pertinente, sino que puede ser suficiente para establecer que una persona está capacitada para manejar un vehículo de motor, en cuanto refleje que su nivel de alcohol en la sangre está por debajo del que prohíbe la ley. Evidentemente, ello sugiere que el nivel prohibido no ha sido seleccionado arbitrariamente, sino que responde a un análisis previo que convenció al legislador de que ese por ciento de alcohol en la sangre puede representar un riesgo para la seguridad ciudadana y que, por el contrario, una cantidad menor a ella no configura tal riesgo.

Finalmente, cabe señalar que décadas atrás ya habíamos aclarado el objetivo detrás de la incorporación

de los porcentajes de alcohol a nuestra legislación sobre vehículos y tránsito. A esos fines, en Pueblo v. Tribunal Superior, 84 D.P.R. 392 (1962), dijimos que "**[a] pesar de que existen diferencias entre los individuos en cuanto se refiere a la forma de absorción y eliminación de alcohol, la investigación científica y la experiencia han demostrado que el análisis del contenido de alcohol en la sangre constituye un medio adecuado y confiable para medir los efectos de las bebidas embriagantes en una persona**" (énfasis suplido). Indicamos que ese método ha recibido la aprobación de diversas entidades especialistas en el asunto, y que "[e]l propósito principal de estas disposiciones es **establecer normas fijas para la determinación de si el acusado estaba bajo la influencia de bebidas alcohólicas,** y eliminar la necesidad de presentar testimonio pericial" (énfasis suplido). Así, pues, no cabe duda que aún en aquel entonces reconocimos el valor que pueden tener las pruebas de alcohol a la hora de determinar lo que es estar bajo los efectos de bebidas embriagantes[5].

---

[5] Su valor fue reafirmado poco después en Pueblo v. Tribunal Superior, 86 D.P.R. 834 (1962). Allí, aun cuando el contenido de alcohol configuraba meras presunciones, dijimos que "[e]l establecimiento de [tales] presunciones en cuanto al contenido de alcohol en las muestras de sangre u orina no tiene otro propósito que **darle al magistrado instructor al determinar causa probable, una base más científica para apreciar debidamente si el conductor del vehículo estaba, al momento de cometer el delito, en estado de embriaguez**" (énfasis suplido).

**IV**

Como surge del análisis anterior, una vez examinamos la intención del legislador al incorporar la frase "[estar] bajo los efectos de bebidas embriagantes" en el Art. 109 del Código Penal de 2004, notamos que se hace referencia a sus artículos antecesores en el derogado Código Penal. A su vez, al auscultar la trayectoria de tales disposiciones, descubrimos que al establecerlas el legislador tuvo en mente, no sólo la letra y los porcentajes de alcohol de la Ley de Vehículos y Tránsito sino, además, la política pública en ella plasmada. Por tanto, ello nos hizo recurrir a las disposiciones de esa ley, de las cuales surge que el legislador procuró que los porcentajes de alcohol en la sangre fueran seriamente considerados a la hora de determinar lo que se puede entender por "[estar] bajo los efectos de bebidas embriagantes" para fines del Art. 109 del Código Penal. Siendo así, la exigencia de conferirle armonía y coherencia a los actos legislativos nos obliga a considerar los niveles de alcohol prohibidos por la Ley de Vehículos y Tránsito al momento de interpretar dicha fraseología en el contexto del Art. 109 del Código Penal.

Ahora bien, aunque estamos llamados a considerar las disposiciones de la Ley de Vehículos y Tránsito a la hora de interpretar la frase "[estar] bajo los efectos de bebidas embriagantes", de igual manera estamos obligados a realizar una interpretación restrictiva cuando ello es

contrario a los derechos de los acusados. En este caso, precisamente, conferirle a las disposiciones de la Ley de Vehículos y Tránsito un carácter normativo o de presunción irrefutable para propósitos del Art. 109 del Código Penal sería contrario a los derechos de la acusada. Si bien no podemos hacer caso omiso a la existencia de tales disposiciones, lo cierto es que el legislador no incorporó expresamente dicha normativa en el texto del Art. 109 del nuevo Código Penal. Ello, de por sí, nos obliga a actuar con cautela y mesura para evitar violar el derecho de la acusada a un juicio justo, sobre todo al tener en cuenta que el término de reclusión que ésta enfrentaría de probarse la modalidad agravada del homicidio negligente podría ser hasta cinco (5) años mayor[6]. La cautela que se impone en este caso tiene su razón de ser también en la naturaleza diversa de los delitos involucrados y en la conveniencia de que sea el propio legislador quien establezca normas de derecho sustantivo en el campo criminal.

Por otro lado, somos conscientes de que en casos criminales las presunciones no pueden tener carácter mandatario ni fuerte en contra del acusado. Regla 15 de

---

[6] Téngase presente que la pena estatuida para el delito de homicidio negligente, por considerarse para fines de la pena como un delito grave de cuarto grado, es un término fijo de reclusión no menor de seis (6) meses y un (1) día ni mayor de tres (3) años, *vis a vis*, el delito en sus modalidades agravadas que, por llevar pena de delito grave de tercer grado, **conlleva un término fijo de reclusión no menor de tres (3) años y un (1) día, ni mayor de ocho (8) años.** Véase Art. 66 del Código Penal, *supra*, 33 L.P.R.A. secs. 4694 (c), (d) y (e).

Evidencia, 32 L.P.R.A. Ap. IV, R. 15; E.L. Chiesa, Tratado de Derecho Probatorio, Tomo II, Editora Corripio, República Dominicana, 1998, pág. 1099. Es decir, la presunción no puede ser incontrovertible o concluyente; no puede tener el efecto de obligar al juzgador a inferir el hecho presumido cuando el acusado no presenta evidencia para refutarlo y no puede requerir que el acusado lo persuada con respecto a la no ocurrencia del hecho presumido. Véase Pueblo v. Sánchez Molina, 134 D.P.R. 577, 587-588 (1993); E.L. Chiesa, Sobre la Validez Constitucional de las Presunciones, 14 Rev. Jur. U.I.A. 727, 750 (1980). Ello responde a que las presunciones incontrovertibles o concluyentes atentan contra la presunción de inocencia y, por consiguiente, son inconstitucionales. *Id.*

Cónsono con lo anterior, procede considerar la normativa establecida en la Ley de Vehículos y Tránsito con respecto a lo que se entiende por "[estar] bajo los efectos de bebidas embriagantes" en el contexto del Art. 109 del Código Penal como una inferencia permisible y controvertible. En vista de ello, al Jurado se le debe instruir sobre dicha normativa para que puedan llegar a la determinación de lo que se puede entender por "[estar] bajo los efectos de bebidas embriagantes" para fines del Art. 109 del Código Penal[7]. De tal forma, la prohibición

---

[7] El manual de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico aún vigente dispone, en el Comentario a la instrucción correspondiente en casos

de que una persona conduzca o haga funcionar un vehículo bajo los efectos de bebidas embriagantes cuando el contenido de alcohol en su sangre sea de ocho (8) centésimas del uno (1) por ciento (.08%) o más, le **permitiría** inferir al Jurado que esa persona, de hecho, estaba bajo los efectos de bebidas embriagantes para propósitos del delito de homicidio negligente en la modalidad agravada que nos concierne.

Por otro lado, la demostración de que la peticionaria tenía un nivel de alcohol en la sangre igual o superior al que prohíbe la Ley de Vehículos y Tránsito necesariamente **no obligaría** a los miembros del Jurado a concluir que ella estaba, de hecho, bajo los efectos de bebidas embriagantes, aun cuando no presente prueba para refutar tal inferencia. Debe quedar claro, además, que así como un nivel de alcohol en la sangre de más de .08% no significa necesariamente que la persona conducía bajo los efectos de bebidas embriagantes, un nivel de alcohol de menos de .08% tampoco implica necesariamente que la

---

de lo que antes constituía homicidio involuntario, que "[c]uando el homicidio involuntario se comete por una persona al conducir un vehículo de motor, **el juez deberá impartir instrucciones en cuanto a las disposiciones de la Ley de Tránsito pertinentes al caso**" (énfasis suplido). *Instrucciones al Jurado para el Tribunal Superior de Puerto Rico*, Conferencia Judicial de Puerto Rico, Segunda Ed., San Juan, 1977, pág. 126. Si bien el uso del manual es discrecional, lo cierto es que sus preceptos gozan de una presunción de corrección. Véase Resolución del Tribunal Supremo de 7 de mayo de 1976, *In Re Aprobación del Libro de Instrucciones al Jurado para el Tribunal Superior de Puerto Rico*.

persona **no** conducía bajo los efectos de bebidas embriagantes.

Ahora bien, a la hora de determinar si la peticionaria estaba o no bajo los efectos de bebidas embriagantes el Jurado puede considerar otros factores relevantes basados en el conocimiento general y la experiencia humana. Es decir, que al momento de interpretar y darle contenido a la frase "[estar] bajo los efectos de bebidas embriagantes" se pueden considerar otros factores que respondan al uso y sentido común de las palabras. Así, por ejemplo, se puede tomar en cuenta, tal como lo hizo el juzgador de instancia al redactar la instrucción que se proponía ofrecer al Jurado, que la frase "bajo los efectos de bebidas embriagantes" se asocia con una disminución o pérdida de las facultades físicas y mentales causada por la presencia de alcohol en el cuerpo. Es decir, se refiere esencialmente a un estado en el que las capacidades físicas, motoras y mentales de un individuo están afectadas por la presencia de alcohol en su cuerpo, al extremo que su funcionamiento se torna distorsionado o perturbado[8].

De conformidad con ello, se pueden considerar las señales o signos que comúnmente presentan las personas

---

[8] Véase Domínguez Vargas v. Great American Life Insurance, *supra*, donde dimos por buena esa interpretación para la frase "bajo los efectos de bebidas alcohólicas o embriagantes" a la luz de su significado común y corriente.

que han injerido alcohol en exceso.  Nótese que el _Diccionario de la Lengua Española_ define "embriaguez" como turbación pasajera de las potencias, exceso con que se ha bebido vino o licor.  También se define como enajenación del ánimo.  Por su parte, "embriagar" se define como atontar, perturbar, adormecer; y como perder el dominio de sí por beber en exceso vino o licor. _Diccionario de la Lengua Española_, Real Academia Española, vigésima primera edición, 1992, pág. 568.

Por tanto, nada impide que al momento de determinar si la acusada estaba bajo los efectos de bebidas embriagantes, el Jurado considere el dominio que ésta tenía sobre sí misma, la apariencia de sus ojos, el dominio del habla, el grado de control que ejerció sobre su vehículo hasta el momento del accidente, su estado anímico, así como cualquier otro factor que refleje el estado de sus facultades físicas y mentales[9].

Aunque la última instrucción propuesta por el Ministerio Público en su alegato ante esta Curia se ajusta a los pronunciamientos anteriores con respecto a

---

[9] Así lo hemos señalado en otras ocasiones. Véase, por ejemplo, _Pueblo v. Díaz Just_, 97 D.P.R. 59 (1969), donde expresamos que se puede establecer que una persona conducía bajo los efectos de bebidas embriagantes por medio del testimonio de personas que observaron su comportamiento.  A esos fines, consideramos el hecho de que ciertos testigos indicaron haber notado que el acusado olía a licor, se tambaleaba y hablaba incoherentemente. Véase también _Pueblo v. Zalduondo_, 89 D.P.R. 64 (1963), _Pueblo v. Soto Cintrón_, 87 D.P.R. 688 (1963), _Pueblo v. Hernández Justiniano_, 86 D.P.R. 793 (1962) y _Pueblo v. Tribunal Superior_, 84 D.P.R. 392, _supra_.

la pertinencia y el peso que se le puede conferir al nivel de alcohol, la misma deja de incluir estos otros factores que el Jurado puede considerar a la hora de determinar si la acusada conducía bajo los efectos de bebidas embriagantes. Por tanto, procedemos a acoger la instrucción propuesta con varias modificaciones dirigidas a suplir dicha omisión. Así, la instrucción que se debe impartir con respecto al delito de homicidio negligente cuando se le imputa al acusado la modalidad agravada consistente de haber causado la muerte al conducir un vehículo de motor bajo los efectos de bebidas embriagantes es la siguiente:

> "Para hallar culpable a la acusada de violar el Art. 109 del Código Penal que establece el delito de homicidio negligente por ocasionar la muerte de las víctimas al conducir un vehículo de motor bajo los efectos de bebidas embriagantes, ustedes tendrán que quedar convencidos más allá de duda razonable de que ésta, al momento de los hechos, conducía su vehículo bajo los efectos de bebidas embriagantes. Además, deberán estar convencidos más allá de duda razonable de que tales muertes se produjeron como consecuencia del riesgo creado por ella al conducir en tales condiciones. Para determinar si la acusada conducía bajo los efectos de bebidas embriagantes para efectos del mencionado Art. 109 del Código Penal, ustedes podrán tomar en consideración que la Ley de Vehículos y Tránsito vigente establece que es ilegal que una persona conduzca un vehículo de motor con una concentración de alcohol en la sangre de .08% o más y que la prueba de alcohol que se le realizó a la acusada arrojó un resultado de .125% de concentración de alcohol en la sangre. Sin embargo, el mero hecho de que la acusada arrojara esa concentración de alcohol en la sangre, no significa que ustedes están obligados a inferir que ella conducía bajo los efectos de bebidas embriagantes ya que en dicha determinación ustedes pueden considerar

otros factores, entre ellos, la forma en que ésta conducía su vehículo hasta el momento del accidente; la condición que mostró después del accidente en cuanto a sus destrezas físicas y motoras; su dominio del habla; el olor que expedía su aliento; la condición y apariencia de sus ojos; así como cualquier otro factor que refleje el estado de sus facultades físicas y mentales y el grado de control que ésta ejercía sobre sí misma.

En resumen, después de considerar toda la prueba, para encontrar culpable a la acusada de violar el Art. 109 del Código Penal, ustedes tendrán que quedar convencidos más allá de duda razonable de que ésta, al momento de los hechos, conducía su vehículo bajo los efectos de bebidas embriagantes. Si, por el contrario, ustedes albergan duda razonable sobre si la acusada conducía bajo los efectos de bebidas embriagantes al momento de los hechos, deben absolverla del cargo de homicidio negligente basado en ocasionar la muerte de las víctimas al conducir un vehículo de motor bajo los efectos de bebidas embriagantes. Igualmente, en cuanto a ese cargo deben absolverla ante duda razonable sobre la relación causal entre la muerte de las víctimas y la conducción bajo los efectos de bebidas embriagantes[10]".

## V

No cabe duda que ninguna regla de interpretación debe derrotar ni menoscabar el propósito del legislador. Ciertamente, estamos convencidos de que la conclusión a la que hemos llegado no tiene ese efecto. Por un lado, validamos el propósito del legislador al aprobar el Art.

---

[10] Debemos enfatizar que la instrucción dispuesta se limita a la modalidad agravada del delito de homicidio negligente basada en haber ocasionado la muerte de una persona al conducir un vehículo de motor bajo los efectos de bebidas embriagantes. Por tanto, mediante este dictamen no pretendemos establecer la instrucción que corresponde ofrecer con respecto a la segunda modalidad del delito de homicidio negligente que se le imputa a la peticionaria, basada en haber causado la muerte al conducir un vehículo de motor con claro menosprecio de la seguridad de los demás.

109 del Código Penal con el lenguaje señalado y ponemos en vigor la política diseñada para proveer seguridad en las carreteras del País. A la vez, eliminamos impedimentos innecesarios a la labor del Estado a la hora de identificar a las personas que actúan en contravención al interés público así plasmado.

Por otro lado, con el resultado alcanzado ponemos en práctica la normativa que nos requiere realizar una interpretación restrictiva cuando, hacer lo contrario, podría menoscabar los derechos del acusado. De esa forma, cumplimos con la tarea de proveerle a la señora Figueroa Pomales las salvaguardas necesarias para asegurarle un proceso justo y un veredicto conforme a derecho.

## VI

Por los fundamentos que anteceden, modificamos el dictamen del Tribunal de Apelaciones y ordenamos que se le imparta al Jurado la instrucción anteriormente dispuesta con respecto a la modalidad agravada del delito de homicidio negligente basada en haber ocasionado la muerte de una persona al conducir un vehículo de motor bajo los efectos de bebidas embriagantes.

Se dictará Sentencia de conformidad.


Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

        v.                        CC-2007-290     Certiorari

Marla Figueroa Pomales

    Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 30 de octubre de 2007.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se modifica el dictamen del Tribunal de Apelaciones y se ordena que se le imparta al Jurado la instrucción anteriormente dispuesta con respecto a la modalidad agravada del delito de homicidio negligente basada en haber ocasionado la muerte de una persona al conducir un vehículo de motor bajo los efectos de bebidas embriagantes.

Así lo pronuncia y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Rodríguez Rodríguez disiente con opinión escrita a la cual se une la Juez Asociada señora Fiol Matta.

                        Aida Ileana Oquendo Graulau
                   Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Recurrido

      v.

Marla Figueroa Pomales               CC-2007-290

    Peticionaria

Opinión disidente emitida por la Juez Asociada señora Rodríguez Rodríguez a la cual se le une la Jueza Asociada señora Fiol Matta

San Juan, Puerto Rico, a 30 de octubre 2007

La controversia que nos ocupa versa sobre la instrucción que el Tribunal de Primera Instancia debe impartir en un caso de homicidio negligente en su modalidad agravada por causarle la muerte a un ser humano mientras se conduce un vehículo de motor bajo los efectos de bebidas embriagantes. Esto, a su vez, requiere evaluar el significado del término "bajo los efectos de bebidas embriagantes" a la luz de los propósitos que el legislador persiguió al incorporar dicho concepto en el tipo del delito de homicidio negligente agravado. Artículo 109, Código Penal de 2004, 33 L.P.R.A. sec. 4737.

En el día de hoy, una mayoría de este Tribunal determina que la instrucción al jurado sobre el elemento de *embriaguez* en el delito de homicidio negligente agravado debe incluir, *como alegada inferencia permisible y controvertible*, una referencia al hecho que la Ley de vehículos y tránsito declara ilegal *per se* el conducir un  vehículo de motor con .08% de alcohol en la sangre.  Artículo 7.02, Ley de vehículos y tránsito, 9 L.P.R.A. sec. 5202 (a).   De esta forma, vía *fiat* judicial, la mayoría **crea una inferencia permisible** a partir de una norma sustantiva de derecho contenida en la Ley de vehículos y luego la traslada al ámbito del Artículo 109 del Código Penal.

Disiento de esta determinación pues recurrir a la norma sustantiva de derecho contenida en la Ley de vehículos y tránsito constituye una aplicación por analogía de un elemento del delito no contenido en el tipo del homicidio negligente. Como explicaré, la mayoría realiza una interpretación inaceptable de la intención del legislador al tipificar el delito de homicidio negligente agravado; interpretación que además rebasa los límites del tenor literal del Artículo 109 del Código Penal.

**I**

Comienzo resaltando que nos corresponde interpretar con suma cautela el lenguaje del Artículo 109 del Código Penal de 2004, 33 L.P.R.A. sec 3473 y  los propósitos que guiaron al legislador a penalizar de modo agravado el acto de ocasionarle la muerte a un ser humando al conducir un vehículo de motor bajo los efectos de bebidas embriagantes.  Ello, siendo conscientes

de las hondas repercusiones que la solución judicial de este caso tendrá en la administración de la justicia y en los juicios criminales por jurado que se celebren al amparo del Artículo 109 del Código Penal de 2004.

La peticionaria, señora Marla Figueroa Pomales (señora Figueroa Pomales) enfrenta tres cargos por homicidio negligente en su modalidad agravada.  La modalidad agravada de dicho delito consiste en 1) ocasionarle la muerte a  un ser humano en claro menosprecio a la seguridad de los demás, o 2) *ocasionarle la muerte a un ser humano al conducir un vehículo de motor bajo los efectos de bebidas embriagantes*.   33 L.P.R.A. sec. 4737. Celebrado el juicio en su fondo, surgió la presente controversia en torno a la instrucción que el Tribunal de Primera Instancia le debe impartir al jurado sobre el significado del término "bajo los efectos de bebidas embriagantes.  Ello, ante el hecho que el Código Penal de 2004 no provee una definición de dicho término.

El Ministerio Público propuso una instrucción que, en esencia, hacía alusión al hecho que la acusada "mientras manejaba o intentaba manejar tenía una concentración de alcohol en la sangre mayor al .08%...,  y que una persona con un .08% o más causa la muerte a un perjudicado sin intención".  Apéndice del recurso de *certiorari,* pág. 29.

No empece la solicitud del Ministerio Público, el Tribunal de Primera Instancia impartió una instrucción en la cual explicó los efectos que una bebida embriagante puede tener en el cuerpo humano.  Dicha instrucción indica que la frase "bajo los efectos

de bebidas embriagantes" conlleva una disminución en las facultades físicas y mentales del individuo, causada por la presencia de alcohol en el cuerpo" y resalta que, estar bajo los efectos de una bebida embriagante "[n]o es un porcentaje de alcohol específico, sino el efecto o incapacidad que genere sobre el individuo, su condición física, metabolismo, peso, tolerancia al alcohol si es hombre o mujer". *Véase* resolución del Tribunal de Primera Instancia, apéndice del recurso de certiorari, págs. 31-32. Establece además que "se requiere que la concentración de la sustancia alcohólica en el individuo sea de tal magnitud que sus capacidades físicas, motoras y mentales se vean afectadas de manera que el funcionamiento del individuo sea uno distorsionado". *Id*., pág. 31. Finalmente, dicha instrucción explica que, al determinar si una persona estaba bajo los efectos de bebidas embriagantes, el jurado deberá tomar en cuenta los siguientes factores: la forma y manera en que el vehículo era manejado, la observación de la persona luego de ser detenida por la policía con especial atención a sus destrezas motoras, lenguaje, olor, vestimenta y el color de sus ojos. *Id.* pág. 32

Mediante dicha instrucción, el tribunal de instancia proveyó un cuadro sobre los posibles efectos físicos que una bebida embriagante puede tener en la persona que la consume y los signos externos que pueden ser indicios del estado de embriaguez. Al adoptarla, el foro primario tomó en cuenta nuestros pronunciamientos anteriores sobre los elementos que pueden indicar que una persona estaba bajo los efectos de

bebidas embriagantes. Específicamente, el tribunal recurrió a nuestras expresiones en *Domínguez v. GA Life,* 157 D.P.R. 690 (2002) sobre el significado de la frase "bajo los efectos de bebidas embriagantes" en el contexto de una póliza de seguros.[11] Además, el tribunal aclaró que dicha instrucción era cónsona con el testimonio del perito del Estado quien declaró sobre los efectos que el alcohol puede tener en la persona y los factores a considerar para determinar si la persona estaba ebria.

Insatisfecho con la instrucción adoptada por el Tribunal de Primera Instancia, el Ministerio Público recurrió al Tribunal de Apelaciones. El Tribunal de Apelaciones revocó la resolución del foro primario y determinó que la instrucción al jurado en este caso tiene que incluir las disposiciones de la Ley de vehículos y tránsito, estatuto que, según dicho foro apelativo intermedio concluyó, "define" cuándo es que un conductor está bajo los efectos de bebidas embriagantes.

Por su parte, la peticionaria, señora Figueroa Pomales recurrió ante nosotros mediante recurso de *certiorari.* En esencia, aduce que la instrucción provista por el foro primario es correcta. En su comparecencia, el Procurador General propuso una nueva instrucción la cual dispone que, al determinar si la acusada se encontraba bajo los efectos de embriaguez, el jurado podrá tomar en consideración que la acusada arrojó un .12% de alcohol en su sangre y que la ley establece que es ilegal

---

[11] En *Domínguez v. GA Life, supra*, pág. 702, indicamos que "la frase 'bajo los efectos de bebidas alcohólicas o embriagantes' denota una disminución o pérdida de las facultades físicas y mentales del individuo, causada por la presencia de alcohol en su cuerpo".

manejar con .08% de alcohol en la sangre. Empero, indica que el jurado no estará obligado a inferir que la acusada conducía en estado de embriaguez sólo por el resultado de la prueba de alcohol.

Hoy, una mayoría de este Tribunal adopta una instrucción que hace alusión al por ciento de alcohol en la sangre que la Ley de vehículos declara ilegal *per se*.

En vista de que el presente caso requiere interpretar el significado de un elemento del delito de homicidio negligente agravado, es imperativo aclarar varios asuntos fundamentales sobre las normas de hermenéutica en el ámbito del Derecho Penal.

## II

Es norma reiteradamente establecida que toda ley, incluso la más clara, es susceptible de cierto grado de interpretación. *Pueblo v. Barreto* Rohena, 149 D.P.R. 718, 722 (1999); Pueblo *v. Sierra Rodríguez*, 137 D.P.R. 903, 906 (1995). Las leyes penales no configuran una excepción a dicho precepto. Sin embargo, al interpretar un estatuto de índole penal, nos corresponde validar los propósitos del legislador, en armonía con las restricciones impuestas por el principio de legalidad,[12] Artículo 2, Código Penal de 2004, 33 L.P.R.A. sec. 4630, y la prohibición de crear delitos, penas o medidas de seguridad por analogía. Artículo 3, Código Penal de 2004, 33 L.P.R.A. secs. 4631.

---

[12] Dicho Artículo dispone que "[n]o se instará acción penal contra persona alguna por un hecho que no esté expresamente definido como delito en este Código o mediante ley especial, ni se impondrá pena o medida de seguridad que la ley no establezca con anterioridad a los hechos". 33 L.P.R.A. sec. 4630.

Siendo conscientes de la delicada tarea que ejercemos al interpretar un estatuto penal, hemos reiterado que nos corresponde conferirle a toda ley una interpretación que responda a los propósitos que ésta persigue y de la intención del legislador. *Pueblo v. Ruiz Martínez*, 159 D.P.R. 194, 210 (2003); *Pueblo v. Barreto* Rohena, *supra*; *Pueblo v. Ríos Dávila,* 143 D.P.R. 687, 696 (1997). En esta tarea de interpretación, el principio de legalidad nos impide sustituir la intención legislativa por la propia. *Pueblo v. Ruiz Martínez*, *supra*, pág. 211.

Al examinar la amplitud y extensión de nuestra facultad de interpretación estatutaria, reiteradamente hemos indicado que el principio de legalidad exige interpretar todo estatuto penal de forma restrictiva a favor del imputado de delito. *Pueblo v. Ruiz Martínez*, *supra*; Pueblo v. *Bonilla*, 148 D.P.R. 486, 502 (1999); *Pueblo v. Ríos Dávila, supra*, pág. 697; *Pueblo v. De León Martínez,* 132 D.P.R. 746, 750 (1988). Empero, dichas aseveraciones merecen ulterior consideración, sobre todo, a la luz de la aprobación del Código Penal de 2004 y del texto del Artículo 13 de dicho Código.

En su Artículo 13, el Código Penal de 2004 dispone que "[l]as palabras y frases se interpretarán según el contexto y el significado sancionado por el uso común y corriente. … Si el lenguaje empleado es susceptible de dos o más interpretaciones, debe ser interpretado para adelantar los propósitos de este Código y del Artículo particular objeto de interpretación". 33 L.P.R.A. sec. 4641. Esta disposición del Artículo 13 constituye

una innovación de nuestro nuevo Código Penal que admite la interpretación restrictiva o extensiva, que adelante el propósito legislativo, siempre que no caiga en la analogía".[13] *D. Nevares Muñiz, Derecho Penal puertorriqueño Parte General*, 5ta ed., San Juan, 2005, sec. 4.5.4, pág. 129. *Véase además*, L. E. Chiesa Aponte, *Derecho Penal Sustantivo*, Publicaciones JTS, EEUU, 2007, sec. 7, pág. 53.

Conforme al mandato del Artículo 13 del Código Penal, es perfectamente válida una interpretación extensiva de la ley penal que no sobrepase su sentido literal posible.[14]   De esta forma, la interpretación será restrictiva o extensiva según amplíe o restrinja el tenor literal de la ley.  F. Muñoz Conde, *Introducción al Derecho Penal*, 2da ed., Buenos Aires, 1975, pág. 238.  En *Pueblo v. Sierra Rodríguez, supra*, clarificamos las diferencias entre la interpretación restrictiva y extensiva de la ley penal.  En dicha ocasión puntualizamos que "la [interpretación] restrictiva consiste en limitarse a entender las palabras en su sentido por considerar que éstas son la "única expresión de la voluntad del legislador, mientras que "[l]a extensiva ocurre cuando la letra de la ley no expresa

---

[13] Esta disposición se adoptó de la sección 1.02(3) del Código Penal Modelo la cual dispone en su parte pertinente:  "when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this Section and the special purposes of the particular provision involved".  Sec. 1.02(3), Cód. Pen. Mod.

[14] Algunos comentaristas equiparan interpretación analógica con la extensiva por sus similitudes, mas no se debe entender que interpretación analógica y analogía significan los mismo puesto que "mientras que la analogía supone una infracción del principio de legalidad, traspasando al 'sentido literal posible' del texto legal, la interpretación analógica respeta el principio de legalidad, permaneciendo dentro del 'sentido literal posible'.  F. Muñoz Conde, *op. cit.*, pág. 235.

claramente el contenido de la voluntad legislativa…". *Id.* págs. 908-09.

La interpretación extensiva se distingue de la analogía proscrita por nuestro Código Penal, pues la primera "importa la aplicación más amplia de la ley hasta donde lo consiente el sentido literal de la misma", mientras que "se entiende por analogía la aplicación de la ley a un caso similar al legislado pero no comprendido en su texto". E. Bacigalupo, *Derecho Penal, Parte General*, 2da ed., Buenos Aires, Ed. Hammurabi, 1999, pág. 129. *Véase además, Pueblo v. Sierra Rodríguez, supra*, pág. 908; S. Mir Puig, *Derecho Penal, Parte General,* 5ta ed., Barcelona, España, 1998, pág. 86. En este respecto, indica el comentarista Jiménez de Asúa que, en ocasiones, es necesario aplicar la interpretación extensiva aun cuando no favorezca al imputado de delito. L. Jiménez de Asúa*, La ley y el delito*, Buenos Aires, 1984, pág. 118. Sin embargo, dicho comentarista aclara que "[n]o basta la *semejanza de razón* para producir la extensión de la ley, pero en caso de *identidad de razón*, incluso las leyes penales pueden ser interpretadas extensivamente, siempre que el caso, además, esté comprendido bajo alguna propia significación de las palabras". *Id.*

En virtud de lo anterior, la interpretación extensiva no está reñida con el principio de legalidad y la prohibición de la analogía, puesto que en la interpretación extensiva "el caso está previsto por los legisladores, incluso con palabras inadecuadas, mientras que en la aplicación analógica no ha sido contemplada aquella hipótesis por la ley". *Id.* pág. 122. Por

tanto, podemos emplear una interpretación extensiva de la ley penal a los fines de hacer valer la intención del legislador. Dicho ejercicio nos permite recurrir al historial legislativo de la ley para entender comprendidos en el término bajo análisis o en el tipo delictivo los casos que el tenor literal de la ley comprende, más no nos faculta a suplir la voluntad del legislador no expresada en la ley, a pesar de que el legislador la pudo haber expresado en el estatuto. *Pueblo v. Ruiz Martínez*, *supra*; *L. Jiménez de Asúa, op. cit,* págs. 121-22.

En fin, existe una distinción material entre la interpretación extensiva y la analogía. Debemos recurrir a la extensiva "cuando la letra de la ley no expresa claramente el contenido de la voluntad de ésta". *D. Nevares Muñiz op. cit.,* pág. 121. Empero, dicha interpretación extensiva no nos permite adoptar una voluntad no existente en la ley, actuación que conllevaría una incursión en el terreno proscrito de la analogía. En todo caso, cuando la interpretación extensiva de la ley no disipe las dudas sobre la voluntad del legislador, se debe interpretar dicho estatuto de forma restrictiva en cuanto desfavorezca al acusado.

## III

Conforme a lo antes reseñado, la presente controversia versa sobre un elemento normativo del delito de homicidio negligente agravado que requiere valoración judicial. *Véase* E. Bacigalupo, *op cit*. La mayoría de este Tribunal correctamente indica que, en vista de que el Artículo 109 del Código Penal no define el término "bajo los efectos de bebidas embriagantes",

nos corresponde aplicar los cánones de interpretación estatutaria en el ámbito penal para determinar cuál fue la intención del legislador al tipificar como delito el causarle la muerte a un ser humando al conducir un vehículo de motor bajo los efectos de bebidas embriagantes.

En su exposición de las pautas de hermenéutica legal aplicables al presente caso, la mayoría aduce que debe interpretar el estatuto penal en controversia de forma restrictiva en tanto desfavorezca a la acusada. Ello, sin menoscabar los propósitos que inspiraron al legislador a aprobar el Artículo 109 del Código Penal. No obstante, a pesar de que la mayoría profesa una estricta adhesión al principio de interpretación restrictiva, luego realiza una interpretación de dicha disposición estatutaria que rebasa el tenor literal de ésta puesto que recurre a aplicar, como alegada inferencia permisible, las disposiciones de la Ley de vehículos y tránsito.

La mayoría emprende un arduo peregrinaje de interpretación estatutaria en su empeño por incluir una referencia a la Ley de vehículos y tránsito en la instrucción al jurado sobre un elemento del delito de homicidio negligente agravado: conducir bajo los efectos de bebidas embriagantes. En esta tarea, se remite al historial legislativo de los Artículos 86 y 87 del Código Penal de 1974 sobre homicidio involuntario, puesto que éstos preceden al Artículo 109 del Código Penal de 2004. Específicamente, alude a la enmienda realizada al Artículo 87 del Código Penal en el año 2003 mediante la cual el legislador aclaró que imprudencia crasa o temeraria al conducir bajo los

efectos del alcohol en el contexto del delito de homicidio involuntario incluía conducir bajo los efectos de bebidas embriagantes. Según la mayoría, al introducir dicha enmienda, el legislador tuvo en cuenta la alta incidencia de accidentes de tránsito en los que los conductores arrojaron un resultado positivo a alcohol en su sangre.

De lo anterior, la mayoría de este Tribunal deduce que, al tipificar como delito el ocasionarle la muerte a un ser humano al conducir en estado de embriaguez, el legislador hizo referencia a las disposiciones de la Ley de vehículos y tránsito, estatuto cuyo norte es combatir el problema de los conductores ebrios en las vías públicas. En vista de que dicho estatuto le confiere gran importancia al por ciento de alcohol en la sangre al determinar si una persona conducía bajo los efectos de bebidas embriagantes, la mayoría entiende que, en un juicio por homicidio negligente agravado, el juez debe instruir al jurado sobre el por ciento de alcohol que la Ley de vehículos y tránsito declara ilegal en el contexto de manejar un vehículo de motor.

Como bien indica la mayoría, a poco que se examine el historial legislativo del Artículo 109 del Código Penal y el de y su antecesor —el Artículo 87 del Código Penal de 1974–, es evidente que el legislador tomó en cuenta los propósitos e la Ley de vehículos y tránsito, estatuto que castiga el conducir un vehículo en estado de embriaguez. Así, el legislador pretendió castigar "rigurosamente a aquellas personas que, a sabiendas del efecto que el alcohol y las drogas producen en sus sentidos,

conducen vehículos de motor en tales condiciones, poniendo en peligro sus vidas y las de otros". Informe sobre el P. de la C. 2283, Comisión de lo Jurídico, Cámara de Representantes, pág. 6. Empero, se equivoca la mayoría al concluir que dicha identidad de propósitos justifica aplicar la norma sustantiva de derecho de la Ley de vehículos y tránsito al delito de homicidio negligente agravado, aun cuando se camufle bajo el manto de una inferencia permisible.

En lo que nos concierne, la Ley de vehículos y tránsito declara ilegal *per se* el que cualquier persona mayor de 18 años de edad conduzca un vehículo de motor con un contenido de alcohol en su sangre de ocho (8) centésimas del uno (1) por ciento. Art. 7.02, Ley de vehículos y tránsito, 9 L.P.R.A. sec. 5202 (a). Dicha disposición establece una norma de derecho sustantivo aplicable a dicho estatuto. La misma encierra un mandato legislativo que se aplica conforme a los términos de dicho estatuto y no a base de inferencias. Es decir, en cualquier procedimiento criminal por infracción a dicho precepto estatutario, la propia Ley exige concluir que la persona estaba bajo los efectos de bebidas embriagantes si la prueba de alcohol en la sangre refleja que la persona tenía una concentración de alcohol igual o mayor al .08%.

Por mandato de la propia Ley, no sólo es ilegal manejar un vehículo de motor con dicho por ciento de alcohol en la sangre, sino que toda persona que viole el referido Artículo 7.02 y a consecuencia de ello le ocasione daño corporal o grave daño corporal a otra persona, incurrirá en delito menos grave en el

primer caso, 9 L.P.R.A. sec. 5205, y en delito grave en el segundo, 9 L.P.R.A. sec. 5206. Como se observa, en ambos casos, el legislador tipificó como delito el ocasionarle daño corporal a otra persona al conducir un vehículo de motor con una cantidad de alcohol en la sangre igual o mayor al.08%.

Sin embargo, al aprobar la Ley de vehículos y tránsito el legislador no tipificó como delito el ocasionarle la muerte a un ser humano al conducir un vehículo en estado de embriaguez. Como bien indica la mayoría, el legislador tipificó dicha conducta en el año 2003 al enmendar el Artículo 87 del Código Penal y luego en el año 2004 al crear el delito de homicidio negligente agravado. No obstante, al establecer el delito de homicidio negligente agravado, el legislador no hizo alusión alguna al por ciento de alcohol en la sangre que la Ley de vehículos y tránsito dispone que es ilegal *per se*. Es decir, a pesar de que al adoptar la Ley de vehículos y tránsito el legislador realizó un juicio valorativo sobre los por cientos de alcohol en la sangre que pueden reflejar si una persona está o no bajo los efectos de bebidas embriagantes, en el año 2003, al enmendar el Artículo 87 del Código Penal de Puerto Rico de 1974, y al aprobar el Artículo 109 del Código Penal de 2004, el legislador no adoptó por referencia directa o indirecta, el mandato legislativo de la Ley de vehículos y tránsito.

La mayoría reconoce que el legislador no incorporó las disposiciones de la Ley de vehículos y tránsito como un elemento del delito de homicidio negligente agravado. Sin embargo, bajo el palio de la interpretación *in pari materia* de estatutos

penales, y so pretexto de conferirle armonía y coherencia a los actos legislativos, incorpora las disposiciones del referido estatuto al ámbito del Artículo 109 del Código Penal. Entiende que, al penalizar la acción de causarle la muerte a un ser humano al conducir un vehículo de motor bajo los efectos del alcohol, el legislador tuvo en mente la Ley de vehículos y tránsito y los por cientos de alcohol en la sangre que dicho estatuto considera ilegales.

No puedo estar conforme con dicha interpretación de la mayoría. Como indiqué, la Ley de vehículos y tránsito no establece una presunción de embriaguez, más bien prohíbe determinada conducta. Muy bien el legislador pudo haber incluido como elemento del homicidio negligente agravado el ocasionar la muerte de un ser humano al manejar un vehículo de motor con .08% por ciento de alcohol en la sangre; o pudo haber indicado que el elemento de embriaguez quedaría definido por la Ley de vehículos y tránsito. Sin embargo, el silencio legislativo no nos permite recurrir a dicho estatuto bajo el razonamiento de que el mismo pretende adelantar los intereses que el legislador tuvo en cuenta al tipificar el delito de homicidio negligente. No están en controversia las motivaciones del legislador al establecer una norma de ilegalidad automática al manejar un vehículo con .08% de alcohol en la sangre. Tampoco cuestiono la validez de los intereses de seguridad pública que la Ley de vehículos y tránsito promueve. Empero, la identidad de propósitos entre dicho estatuto y el Artículo 109 del Código Penal no justifica rebasar los límites de la

interpretación estatutaria para extender las disposiciones de la Ley de vehículos y tránsito al delito de homicidio negligente.

El principio de hermenéutica que nos permite armonizar las disposiciones de leyes distintas que versan sobre la misma materia, *Pueblo v. Valentín*, 135 D.P.R. 245, 252 (1994), no nos faculta a interpretar un elemento del delito de homicidio negligente conforme a una norma sustantiva de derecho contenida en otro estatuto. Es imperativo advertir que, bajo el "manto protector" de una alegada inferencia permisible" la mayoría utiliza una norma sustantiva contenida en la Ley de vehículos y tránsito y la incorpora al delito de homicidio negligente agravado. Es decir, bajo el palio de una inferencia permisible, la mayoría incorpora un nuevo elemento al delito de homicidio negligente que el legislador no incluyó. Ello configura una aplicación analógica de la ley penal que no puedo sancionar.[15]

En fin, la mayoría "traslada[] la norma de un marco institucional a otro". F. Muñoz Conde, *op. cit.*, pág. 239 (*citando a* Díez Picazo, *Experiencias jurídicas y teoría del derecho*, Madrid, 1974, pág. 282). Indica que no fue por casualidad que el legislador utilizó el término "bajo los efectos de bebidas embriagantes" en ambos estatutos. Sobre ello basta acotar que la Asamblea Legislativa tiene la facultad

---

[15] Ello, además, sin duda alguna llevará a un jurado razonable a entender que si la acusada tenía un por ciento del alcohol en la sangre mayor al permitido por ley, ella estaba embriagada. De esta forma, la alegada inferencia permisible se convertirá entonces en una presunción mandatoria que vulnera los derechos constitucionales de la acusada a un juicio justo e imparcial, a la presunción de inocencia y trastoca el deber del Estado de probar todos los elementos del delito más allá de duda razonable.

constitucional exclusiva de tipificar delitos. *Pueblo v. Martínez Torres*, 116 D.P.R. 793, 796 (1986). Por tanto, con especial recelo en materia de Derecho Penal, es inaceptable realizar un juicio de probabilidades al dirimir el sentido que el legislador le quiso conferir a cierto término. Por el contrario, debemos ejercer nuestra función de interpretación a la luz del lenguaje utilizado en el estatuto, el uso común y corriente de los términos y del historial legislativo de la ley, velando por hacer valer la intención del legislador y los propósitos del Código Penal.

En este caso, como indiqué, nada en el lenguaje del Artículo 109 del Código Penal o en su historial legislativo nos permite determinar que el legislador quiso definir el concepto "bajo los efectos de bebidas embriagantes" a partir de las disposiciones sustantivas de la Ley de vehículos y tránsito. Por tanto, habida cuenta de que las instrucciones al jurado pretenden incluir una explicación correcta, clara y precisa sobre la evidencia presentada y el derecho aplicable, *Pueblo v. Sánchez Molina*, 134 D.P.R. 577, 590-91, es inaceptable incluir alusión alguna al por ciento de alcohol en la sangre que la Ley de vehículos y tránsito declara ilegal *per se* en el contexto de manejar un vehículo de motor. Ello no se subsana con indicar que se adoptará dicha normativa en el contexto de una inferencia permisible que el juzgador no estará obligado a aceptar como concluyente.

**IV**

Conforme a lo anterior, entiendo que la instrucción propuesta por el Tribunal de Primera Instancia guarda sintonía con nuestros pronunciamientos anteriores sobre los elementos probatorios que, a la luz de la prueba presentada y de la totalidad de las circunstancias, pueden llevar al juzgador de los hechos a determinar si la persona manejaba bajo los efectos de bebidas embriagantes. [16] *Véanse Pueblo v. Casiano*, 87 D.P.R. 491, 494 (1963); *Pueblo v. Soto Cintrón*, 87 D.P.R. 688 (1963); *Pueblo v. Hernández Justiniano*, 86 D.P.R. 793 (1962).

Aun cuando la mayoría reconoce que en este caso el jurado puede considerar las circunstancias concomitantes que abonan a la conclusión de que la peticionaria manejó un vehículo bajo los efectos de bebidas embriagantes, tales como  el dominio de la persona sobre su cuerpo, sus ojos, su aliento, el habla y la forma en que conducía su vehículo, también determina que el jurado podrá inferir que la peticionaria estaba bajo los efectos de bebidas embriagantes a partir del por ciento de alcohol en la sangre la Ley de vehículos y tránsito declara ilegal.  Por las razones antes detalladas, entiendo que el tenor literal del

---

[16] En *Pueblo v. Casiano, supra,* pág. 494, indicamos que, "independientemente del resultado del análisis, el testimonio del policía que gestionó la toma de la muestra estableció en forma incontrovertida [*sic]* que el apelante daba muestras de encontrarse en estado de embriaguez -apenas podría sostenerse en pie, no tenía control de sus reflejos musculares, su aliento despedía un fuerte olor a licor[y], hablaba en forma entrecortada. (citas omitidas).  Además, en *Pueblo v. Hernández Justiniano*, 86 D.P.R. 793 (1962), a pesar de que no se activó la presunción de embriaguez a partir del por ciento de alcohol en la sangre del acusado, determinamos a la luz de la prueba presentada que el acusado no se encontraba en tal estado de embriaguez que no le hubiera permitido conducir un vehículo de motor con pericia o lucidez.

Artículo 109 del Código Penal no nos permite trasladar la norma de la Ley de vehículos y tránsito al contexto del delito de homicidio negligente agravado.

Soy del criterio que los factores que en el pasado hemos indicado abonan a la conclusión de que un individuo manejó un vehículo de motor bajo los efectos de bebidas embriagante, junto a la prueba desfilada en el juicio, incluyendo los resultados de una prueba de sangre o de aliento, deben servir de norte en una instrucción al jurado que pretenda definir qué significa guiar bajo los efectos de bebidas embriagantes. Ello, sin necesidad de instruir al jurado sobre las disposiciones de la Ley de vehículos y tránsito.


                          Anabelle Rodríguez Rodríguez
                               Juez Asociada