EL PUEBLO DE PUERTO RICO, denunciante y apelado, *v.* JOSÉ RAMÓN HERNÁNDEZ JUSTINIANO, acusado y apelante.

*Número:* CR–62–219    *Resuelto:* 18 de diciembre de 1962

*Felipe Marchand González,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Juan A. Faría, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

El Fiscal del Tribunal Superior de Puerto Rico, Sala de Mayagüez, formuló acusación contra José Ramón Hernández Justiniano, por una violación al Art. VIII de la Ley Núm. 141 de 1960, porque "allá en o para el día 1ro. de julio de 1961 y en Mayagüez, Puerto Rico . . . ilegal, voluntaria, maliciosa y criminalmente y bajo los efectos de bebidas embriagantes conducía por una vía pública, un vehículo de motor marca Chevrolet."

La prueba demuestra que ese día, como a las cuatro y media de la tarde venía el perjudicado Rafael Quiñones García conduciendo su automóvil cerca de una escuela y el acusado que venía detrás de él, al verse obligado el señor Rafael Quiñones García a detener la marcha de su vehículo, chocó su automóvil contra el del señor Rafael Quiñones García. El testigo presencial Leopoldo Enrique Martínez, quien resulta ser un testigo desinteresado, describe el choque en la siguiente forma: "Bueno, precisamente porque él venía delante, [se refiere a Rafael Quiñones García] entonces

paró de golpe y el otro [se refiere al acusado] venía muy pegado." (t. 59.)

Según la versión del perjudicado, cuando el acusado bajó de su automóvil, caminó tambaleándose, "olía mucho a licor y trataba de pasarme la mano . . . tenía los ojos colorados. En un estado bastante borracho". (t. 14.) Esta es la única descripción categórica del estado de embriaguez del acusado. El testigo del Pueblo, el Doctor René Quintana Ramírez, quien le tomó la muestra de orina al acusado esa misma tarde, declara: ". . . Yo diría que este señor había ingerido alguna bebida alcohólica, pero su condición estaba . . . era en general buena, normal. Vamos, se comportó muy bien, yo diría. No estaba alterado y accedió a todo lo que se le pidió" (t. 4); al escribir sus trazos eran correctos (t. 6); no daba tumbos al caminar (t. 9); su hablar era bastante claro, (t. 10); no recuerda que tuviera las pupilas enrojecidas (t. 10); no tartamudeaba al hablar (t. 10); lo único que notó en él era el olor a licor (t. 10); que en algunas ocasiones ha montado con personas guiando en las mismas condiciones, más o menos, que estaba el acusado (t. 12). El testigo Leopoldo Enrique Martínez, quien observó al acusado en el momento del choque, declaró: que el acusado venía en su automóvil acompañado de una niña de diez o doce años (t. 52); que el acusado estaba en una actitud buena, normalmente, no se tambaleó en ningún momento (t. 53); estaba pacífico (t. 54); en aquel momento no expedía olor a alcohol (t. 54.) El testigo Carlos Fernando Cintrón declara que ese día el acusado llegó a su casa nervioso porque le había dado un cantazo a un carro y el testigo le dijo: —"Tú estás nervioso, vamos a darnos un par de palos"— y fueron a casa de la madre del testigo, donde había una botella de Ron Puerto Rico y se dieron cinco palos (t. 61); después de allí fueron al Cuartel de la Policía, manejando el testigo (t. 62); que fueron al Cuartel por "el accidente ése" (t. 62); que el acusado estaba perfectamente bien (t. 62);

que se dieron "cinco palitos chiquitos" (t. 63.) El policía Alejandro Santiago, cuyo testimonio fue puesto a disposición de la defensa por el Fiscal, declara: que la tarde del accidente vio al acusado en el Cuartel de la Policía y "él manifestó que él luego de haber tenido el accidente y haber llegado a un acuerdo con el señor Quiñones, se había dado unos tragos . . . luego del accidente" (t. 65); el testigo acepta haberle dicho al Fiscal que cuando él había visto al acusado tenía los ojos enrojecidos y que daba tumbos (t. 71); después aclara que lo que dijo al Fiscal fue que "al principio estaba dando ciertos tumbos, pero al poco rato continuó andando bien" (t. 72); que ante el testigo en el Cuartel, el acusado "se portó normal" (t. 73).

El perito del Pueblo, el químico Pedro A. Sierra Purcell estableció con vista al análisis comprobado de la muestra de orina, que el acusado tenía en la orina cero, punto trece por ciento de alcohol (t. 30). Existe en el testimonio pericial puntos muy interesantes sobre la tolerancia para el alcohol de ciertos individuos que hacen variar las condiciones de la embriaguez alcohólica y así afectan o no afectan en el mismo grado la capacidad del que toma el alcohol, pero omitimos su exposición por el razonamiento que a continuación expresamos: ■

La sección 5-801(b) de la Ley Número 141 de 20 de julio de 1960, dispone: "En cualquier proceso criminal por infracción al párrafo (a) que precede, relacionado con el manejo de un vehículo de motor bajo los efectos de bebidas embriagantes, la cantidad de alcohol existente en la sangre del acusado al tiempo en que se cometiere la alegada infracción según surja tal cantidad del análisis químico de su sangre, orina o aliento, constituirá base para las siguientes presunciones: . . . (2) Si al momento del análisis se hallare en la sangre del acusado más de cinco (5) centésimas de uno por ciento pero menos de quince (15) centésimas de uno (1) por ciento, por peso de alcohol, tal prueba no constituirá base para pre-

sumir que el acusado estaba o no bajo los efectos de bebidas embriagantes, pero dicha prueba podrá ser considerada conjuntamente con otra evidencia competente para determinar la culpabilidad o inocencia del acusado." En este caso, el resultado del examen fue de 0.13% de alcohol y por lo tanto, del análisis químico a que voluntariamente se sometió el acusado, no podemos deducir su culpabilidad a menos que el resto de la prueba demuestre que el acusado se encontraba bajo los efectos de bebidas embriagantes al conducir su automóvil. ▬

Con excepción del testimonio del perjudicado, el resto de la prueba, la que más desinteresada nos parece, demuestra que al momento de ocurrir el accidente, al dirigirse al Cuartel, y más tarde al hospital a tomarse la muestra de orina, el acusado no se encontraba en tal estado de embriaguez que no le hubiera permitido conducir un vehículo de motor con pericia o lucidez. Nuestra ley no persigue una total abstención del uso del alcohol al momento de conducir un automóvil, sino más bien una moderada abstención hasta el límite científico en que el uso del alcohol no constituya un peligro público.

Considerada en su totalidad la prueba presentada en este caso, la misma no demuestra la culpabilidad del acusado fuera de toda duda razonable, y siendo esto así, es nuestra obligación resolver la duda en favor del acusado y absolverlo.

*Debe revocarse la sentencia dictada en este caso.*