EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FÉLIX ECHEVARRÍA, acusado y apelante.

*Número:* CR-62-228.     *Resuelto:* 4 de febrero de 1963.

*Guillermo Bauzá* y *Santiago Polanco Abreu,* abogados del apelante; *J. B. Fernández Badillo, Procurador General,* y *Juan A. Faría, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

■ No hay duda que al momento del choque debemos presumir que el acusado estaba conduciendo su automóvil bajo los efectos de bebidas embriagantes. El análisis dio 0.17 por ciento por peso de alcohol en la sangre y 0.22 por ciento por peso de alcohol en la orina. La declaración del dueño del automóvil chocado dejó establecido que el acusado estaba bajo los efectos de bebidas embriagantes al ocurrir el choque. La defensa del acusado, en el sentido, que fue después del choque cuando empezó a beber, resulta tan contraria al curso normal de la conducta humana, que la ilustrada Sala sentenciadora no le dio crédito alguno. Hasta cierto extremo, este caso presenta una situación contraria a la que examinamos en el caso de *Pueblo* v. *Hernández Justiniano*, 86 D.P.R. 793 (Belaval) (1962) cita precisa a la pág. 797. En el caso de *Hernández* el análisis químico de la orina dio 0.13 por ciento y establecimos, de acuerdo con la Sec. 5–801 (b) de la Ley Núm. 141 de 20 de julio de 1960, que si el resultado del análisis estaba por debajo de 0.15 por ciento de dicho análisis no se puede deducir la culpabilidad del acusado por conducir un automóvil bajo los efectos de bebidas embriagantes, en ausencia de otra prueba competente. En tal caso, la presunción resulta favorable al acusado. Sin embargo, cuando el análisis demuestra un peso en gramos de alcohol después de la destilación correspondiente sobre el 0.15 por ciento, la presunción establecida por la Sec. 5–801 (b) (3) resulta contraria al acusado.

Los dos errores señalados por el apelante se refieren, el primero, a ciertas irregularidades en el procedimiento de remitir las muestras al Departamento de Salud, en violación al reglamento adoptado a tal efecto y a la insuficiencia de la prueba sobre los motivos razonables del agente del orden público para requerir del acusado la toma de una muestra de sangre u orina.

1. La autoridad para promulgar el reglamento está concedida al Secretario de Salud por la Sec. 5-803 de la Ley Núm. 141 de 20 de julio de 1960 que dispone: "d) Se faculta al Secretario de Salud para reglamentar la forma y sitios en que habrán de tomarse, envasarse y analizarse las muestras de sangre y de orina, así como aquellos otros procedimientos afines al análisis químico, pero con sujeción a lo dispuesto en los incisos (f), (g) y (h) de esta Sección.

"Asimismo se faculta al Secretario de Salud para adoptar y reglamentar el uso del alcoholímetro, intoxímetro o cualesquiera otros aparatos o instrumentos científicos que estimare necesarios para determinar mediante el análisis del aliento el por ciento de concentración alcohólica en la sangre de los conductores que fueren detenidos por conducir o hacer funcionar vehículos de motor bajo los efectos de bebidas embriagantes.

"e) Los hospitales y otros servicios de salud pública estatales y municipales y su personal quedarán sujetos a las reglas y reglamentos que promulgue bajo la autoridad del inciso (d) de este Artículo, el Secretario de Salud.

"f) Toda muestra de sangre u orina será dividida en tres partes: Una será entregada a la persona detenida, para que la envíe a analizar a un químico de su selección, si así lo deseare, y las otras dos serán reservadas para el uso del Departamento de Salud, una de ellas con el propósito de ser usada en el análisis químico requerido por este artículo y la otra, se conservará para ser analizada únicamente por instrucciones del Tribunal, en caso de que existiere discrepancia entre el análisis oficial y el análisis hecho privadamente por instrucciones del acusado.

"g) Solamente un médico, enfermera graduada o cirujano menor, actuando a petición de un agente del orden público o de un Magistrado, podrá extraer una muestra de sangre para determinar su contenido alcohólico.

"h) Copia del resultado del análisis químico del aliento, de orina o de la sangre del acusado según fuere el caso, le

será remitida a la Secretaría del Tribunal de Distrito del lugar donde ocurrieron los hechos, para su debida incorporación al expediente del caso. Si el acusado lo solicitare, le será enviada una copia del resultado del análisis químico."

El reglamento promulgado en virtud de esta autorización, extractado en las partes pertinentes al error señalado, dispone lo siguiente:

"Sec. 1043-3.—Partes de remisión

Cada muestra de sangre u orina irá acompañada de una parte de remisión que suplirá el Departamento de Salud y que será cumplimentado en cuadruplicado y firmado por la persona que tome la muestra, cuidándose de que cada copia contenga exactamente la misma información.

"Sec. 1043-4.—Envase y remisión de muestras al Departamento de Salud

"Dos de los frascos conteniendo porciones de las muestras, sean de sangre o de orina, se colocarán en un envase apropiado y se enviarán dentro de las próximas 12 horas de haberse tomado a los Laboratorios del Departamento de Salud por la persona que tomó la muestra, o, en su defecto, por el director o ejecutivo del hospital estadual, municipal, o centro de salud. En la etiqueta de dirección se pondrá el nombre y dirección del remitente.

"Sec. 1043-5.—Entrega al sujeto de una porción de la muestra

"La tercera porción de la muestra, sea de sangre o de orina, con la tercera copia del parte de remisión se entregará al sujeto o persona a quien se le tomó la muestra o al familiar o amigo que lo acompañe cuando el sujeto se negare a recibirla o su condición física se lo impidiere. La persona que reciba la tercera porción de la muestra firmará en el parte de remisión y sus copias el recibo correspondiente de tal muestra." 9 Reglas y Reglamentos del Estado Libre Asociado de Puerto Rico 308.7-308.8 Secs. 1043-3, 1043-4, 1043-5.

■ El acusado se queja que en el parte de remisión de la muestra, no se siguieron las indicaciones de la Sec. 1043–3 del Reglamento porque en el encasillado en el cual debe aparecer el nombre del médico sólo constan las letras B.A., y por lo tanto, "dejó de establecerse la continuidad que debe existir en casos de la naturaleza del presente". La prueba establece claramente que la muestra fue tomada en presencia del testigo médico, doctor Roque Barrios Mariano, que la noche del 17 de septiembre de 1960 estaba de guardia en el Hospital Municipal de Río Piedras, y después de orinar el acusado, el testigo vació el contenido de la emisión en tres frascos que quedan herméticamente cerrados, entregándole un frasco al acusado y los otros se le enviaron a la Supervisora del hospital, quien es la persona encargada de ponerlos en el correo con destino al laboratorio químico del Departamento de Salud; por otra parte, la señora Olga Josefa Díaz, química del Departamento de Salud, declaró que la prueba de orina del acusado fue recibida en el Departamento el día 22 de septiembre y analizada por ella el día 7 de octubre, dando el resultado ya conocido. En el supuesto que la remisión de la prueba fuera enviada más tarde de las doce horas prescritas por el reglamento para su remisión, nada hay en la prueba que indique como se altera, por el tiempo transcurrido entre la toma por el hospital y la entrega al Departamento de Salud, la muestra suplida. Si bien la buena práctica administrativa exige que el reglamento se cumpla a cabalidad, cualquier infracción del mismo no puede constituir una defensa para el acusado, a menos que se demuestre un verdadero error en la identificación de la muestra o una alteración en la composición química que pueda cambiar el resultado del análisis. Además, siendo la regularidad de los procedimientos, una presunción establecida por ley, es al acusado a quien corresponde probar cualquier desviación perjudicial del procedimiento reglamentario.

■ El acusado también se queja de la descripción que en la lista de testigos se hace del testigo médico como: "El

doctor que tomó la muestra de orina Núm. 391, a Félix Echevarría el día 17 de septiembre de 1960, en el Hospital Municipal de Río Piedras, P. R.", en vez de identificarlo por su nombre. Se argumenta que tal inclusión imprecisa constituye "una violación al derecho del acusado a estar informado de los testigos que se han de utilizar en su contra". La inclusión da la suficiente noticia sobre la persona descrita y no creemos que el acusado hubiera tenido ninguna dificultad en saber de quien se trataba por ser un hecho dentro de su propio conocimiento. Frente a la regla de liberalidad consagrada por nuestra jurisprudencia en cuanto al uso de testigos no incluidos al dorso de la acusación, no creemos que el argumento tenga mérito.

■ El segundo error plantea la ilegalidad del arresto porque el mismo se realizó a instancia del perjudicado en el choque y no, porque, de acuerdo con la Sec. 5–803 de la Ley Núm. 141 de 20 de julio de 1960, el agente del orden público tuviera motivos razonables para creer que el acusado conducía o hacía funcionar un vehículo bajo los efectos de bebidas embriagantes. Sin embargo, el sargento de la policía insular, a cargo de supervisar el tránsito en el área metropolitana declaró que notó que el acusado despedía un fuerte olor a licor y tenía la vista un poco dilatada; "le requerí si aceptaba dejarse sacar la muestra de sangre u orina y él aceptó voluntariamente, él lo aceptó con la condición, o sea, nos informó que él se había dado unos palos después que había chocado y fuimos al Hospital Municipal de Río Piedras y allí también aceptó dejarse sacar la muestra de orina, lo que se hizo delante de mí y del Doctor" (t. 26). Cualquier insuficiencia que pudiera tener la descripción del estado de embriaguez queda fortalecida por la propia admisión del acusado que él se había dado unos palos, aunque después de haber chocado. Si bien es cierto que otro de los agentes del orden público declaró que fue a insistencias del dueño del carro chocado, que este último agente había notado el olor a

licor que tenía el acusado, no creemos que tal circunstancia deba aislarse del resto de la prueba para concluir que los agentes del orden público no tenían motivos razonables de los cuales pudieran inferir que el acusado se encontraba en estado de embriaguez mientras conducía su automóvil.

*La sentencia debe ser confirmada.*