El Juez Asociado Señor Estrella Martínez
emitió la opinión del Tribunal.
Nos corresponde determinar si un policía que realizó una prueba preliminar de aliento a un conductor que expe-lía olor a alcohol y exhibía signos aparentes de embria-guez, en violación al periodo de observación reglamentario de 20 minutos, tenía motivos fundados para trasladar al individuo al cuartel y realizarle una prueba definitiva de aliento para detectar el nivel de alcohol en la sangre. Ade-más, debemos resolver si la supresión de la prueba de campo acarrea automáticamente la exclusión de la prueba científica posterior. Por entender que el agente del orden público tenía motivos fundados para creer que el detenido conducía un vehículo de motor bajo los efectos de bebidas embriagantes y que la exclusión de la evidencia científica de campo no acarrea la supresión automática de la eviden-cia científica posterior, revocamos el dictamen recurrido.
r-H
Eran aproximadamente a las 2:30 de la tarde del 20 de marzo de 2011. La patrulla policial aparcaba al margen de la Carretera Núm. 2, en dirección de Ponce a Yauco. En su interior, el agente Jesús Vélez Pabón registraba la veloci-dad de los vehículos que por allí transitaban. Era una zona con límite de 55 millas por hora. A esa hora, el radar em-pleado por el agente marcó a un vehículo que discurría muy apresurado, a 85 millas por hora.
*269 El policía hizo señas para que el conductor del automó-vil se detuviera. Luego de avistar al agente, el chofer que circulaba por encima del límite suspendió la marcha. El policía se aproximó al auto y le solicitó al conductor del deportivo blanco y subcompacto Toyota la licencia de con-ducir y los documentos del vehículo.
Fue ahí cuando el Sr. Héctor Caraballo Borrero bajó la ventanilla de su automóvil y el agente Vélez Pabón perci-bió un fuerte olor a alcohol.(1) El policía inquirió respecto a la causa del hedor. El conductor del deportivo blanco tuvo dificultad en proferir palabras para darse a entender.(2) Pero consiguió enunciar una respuesta afirmativa. Con el habla pesada, voluntariamente aceptó haberse dado unos tragos.(3) Informó además que se dirigía a su trabajo. En el acto, el agente le impartió las advertencias de ley y le or-denó desmontarse. Sin oponer resistencia, el señor Cara-bailo Borrero así lo hizo.
Eran las 2:35 de esa tarde, cuando el agente Vélez Pa-bón le realizó al conductor la prueba de aliento con el ins-trumento Aleo-Sensor. Habían transcurrido 5 minutos desde la intervención con el recurrido. El resultado de la aludida prueba fue positivo. El agente arrestó al chofer y le trasladó al cuartel. Allí se le realizó al arrestado una se-gunda prueba de aliento —en esta ocasión con el instru-mento conocido como Intoxilyzer 5000— la cual arrojó un resultado de .175 centésimas del uno por ciento de alcohol en la sangre. A esa altura ya habían transcurrido 35 minu-tos desde la intervención inicial.(4) Durante ese tiempo, el agente se ocupó de que el señor Caraballo Borrero no co- *270 miera, fumara o vomitara, circunstancias que bien podrían alterar el resultado de la prueba.(5)
Por esos hechos se le expidió un boleto por exceso de velocidad al señor Caraballo Borrero y se presentó una de-nuncia contra él por manejar un vehículo de motor bajo los efectos de bebidas embriagantes, en violación al Art. 7.02(a) de la Ley de Vehículos y Tránsito de Puerto Rico.(6) Posteriormente, se determinó causa probable para proce-sar al señor Caraballo Borrero por el delito imputado y las partes quedaron citadas para el juicio en su fondo, por tra-tarse de un delito menos grave.
Oportunamente, la defensa del señor Caraballo Borrero presentó una moción de supresión de evidencia. En ella argumentó que el agente Vélez Pabón administró la prueba de aliento con el instrumento Aleo-Sensor a solo 5 minutos de la intervención. Por ello, solicitó la supresión del resultado de dicha prueba por haberse incumplido con el requisito de 20 minutos de observación previo a la su aplicación de ésta, según lo dispuesto en el Reglamento Núm. 7318 de 9 de marzo de 2007 del Departamento de Salud, que regula la toma de pruebas científicas para de-terminar la concentración de alcohol y otras sustancias en la sangre.(7) Según la defensa del señor Caraballo Borrero, de esa prueba preliminar fue que el agente Vélez Pabón derivó los motivos fundados para arrestar al imputado, trasladarlo al cuartel y administrarle en ese recinto la prueba con el instrumento Intoxilyzer 5000, por lo que esta prueba posterior también fue ilegal e irrazonable, pero ante todo, inadmisible por ser producto de un arresto *271 ilegal. En suma, la defensa solicitó la supresión de los re-sultados de la prueba con el instrumento Aleo-Sensor y otros tantos de la prueba del Intoxilyzer 5000.
El Ministerio Público presentó un escrito para oponerse a la moción de supresión de evidencia. Argumentó que el uso del Aleo-Sensor por parte del agente en la carretera es discrecional, que no es admisible en evidencia y que de dicha prueba no se emite resultado en documento alguno. Alegó, además, que el resultado de la prueba de campo solo abona a los signos de embriaguez que recopila el agente mediante sus sentidos y que conforman los motivos funda-dos para sospechar razonablemente que la persona dete-nida se encuentra bajo los efectos de bebidas embriagantes.
El Tribunal de Primera Instancia celebró una vista de supresión de evidencia. El Ministerio Público presentó el testimonio del agente Vélez Pabón. Finalizada la vista, el foro primario determinó que no se cumplió con el mínimo de 20 minutos de observación, previos a la realización de la prueba de Aleo-Sensor. Además, el tribunal expuso que el policía trasladó al arrestado al cuartel para efectuarle la prueba posterior con el Intoxilyzer 5000 dado el resultado de la prueba preliminar del Aleo-Sensor que él administró, resultado positivo que le dio motivos fundados para ello. En consecuencia, el tribunal suprimió los resultados de las pruebas de Aleo-Sensor, de Intoxilyzer “y todo lo posterior”.(8)
Insatisfecho con la supresión automática de toda la evi-dencia científica, el Ministerio Público, representado por la Oficina del Procurador General, acudió al Tribunal de Ape-laciones mediante un recurso de certiorari. Argumentó que el Tribunal de Primera Instancia no realizó un análisis particularizado de los hechos para dirimir los potenciales efectos adversos de no haber esperado 20 minutos para la *272 prueba de Aleo-Sensor, con el propósito de determinar si ello afectó el valor probatorio de la prueba realizada poste-riormente con el Intoxilyzer 5000.
Luego de evaluar los planteamientos de las partes, el Tribunal de Apelaciones denegó expedir el recurso de certiorari. Entendió ese foro que como el agente no cumplió con el plazo reglamentario de observación de 20 minutos, la prueba de campo efectuada con el Aleo-Sensor era invá-lida, lo cual, a su vez, también invalidaba el resultado de la prueba posterior del Intoxilyzer 5000.
Inconforme, el Estado acudió ante nos mediante un re-curso de certiorari y una moción en auxilio de jurisdicción. En síntesis, alega que los foros a quo aplicaron una norma de exclusión absoluta y suprimieron toda la evidencia cien-tífica sin hacer un análisis particularizado de los hechos, según lo resuelto en Pueblo v. Montalvo Petrovich, 175 D.P.R. 932 (2009), para dirimir los efectos adversos que tuvo el incumplimiento con el periodo de observación de 20 minutos previo a efectuar la prueba con el Aleo-Sensor. Ello con el propósito de determinar si se vio afectado el valor probatorio de la prueba posterior realizada con el In-toxilyzer 5000.
Examinado el recurso, expedimos el auto solicitado y ordenamos la paralización de los procedimientos en el Tribunal de Primera Instancia. Con el beneficio de la compa-recencia de las partes, procedemos a resolver.
II
Nuestra Constitución prohíbe que, de ordinario, un funcionario del orden público arreste a alguna persona sin previa orden judicial fundada en una determinación de causa probable. Art. II, Sec. 10, Const. E.L.A., L.P.R.A., Tomo 1; Pueblo v. Martínez Torres, 120 D.P.R. 496, 500 (1988). Este requerimiento constitucional no es absoluto. Un agente del orden público puede realizar un arresto sin *273 previa orden judicial cuando: (1) se ha cometido un delito en su presencia; (2) se ha cometido un delito grave, sea o no en su presencia, y (3) cuando tuviese motivos fundados para creer que la persona ha cometido un delito grave. Regla 11 de Procedimiento Criminal, 34 L.P.R.A. Ap. II; Pueblo v. Serrano Reyes, 176 D.P.R. 437, 444 (2009).
Existen motivos fundados si de la totalidad de las circunstancias del caso se desprende que una persona ordinaria y prudente poseería aquella información y el conocimiento que la llevarían a creer que la persona intervenida ha cometido un delito. Pueblo v. Calderón Díaz, 156 D.P.R. 549, 557 (2002); Pueblo v. Colón Bernier, 148 D.P.R. 135, 142 (1999); Pueblo v. Ruiz Bosch, 127 D.P.R. 762, 770 (1991); Pueblo v. Martínez Torres, supra, pág. 504. Ello, indistintamente de que luego se pruebe o no la comisión de tal delito. Íd.
El concepto “motivos fundados” es sinónimo del término “causa probable” empleado en el contexto de la expedición de una orden de arresto. Pueblo v. Calderón Díaz, supra, pág. 557; Pueblo v. Díaz Díaz, 106 D.P.R. 348, 353 (1977). La existencia de motivos fundados se determina a base de los criterios de probabilidad y razonabilidad. Pueblo v. Ortiz Alvarado, 135 D.P.R. 41, 47 (1994). Lo verdaderamente importante es que el agente que efectúa un arresto y regis-tro sin orden judicial previa tenga, al momento de hacerlo, una base razonable que se desprenda de la totalidad de las circunstancias para creer que se está violando o se iba a violar la ley. Id. Dicho de otra manera, para dirimir si un agente del orden público tenía motivos fundados para arrestar a un ciudadano sin una orden “es indispensable analizar la información que le constaba a éste y el cuadro fáctico que éste tenía ante sí al momento del arresto para, entonces, determinar si esos hechos pudieron llevar a una persona prudente y razonable a creer que la persona que iba a ser arrestada había cometido, o iba a cometer, la *274 ofensa en cuestión”. Pueblo v. Calderón Díaz, supra, pág. 559.
No puede olvidarse que “[c]ada delito tiene unas características externas, una manera de realizarse, que lo proyectan visualmente, tipifican la circunstancia delictiva y dirigen el raciocinio hacia la concreción de motivos fundados para el arresto”. Pueblo ex rel. E.P.P., 108 D.P.R. 99, 101 (1978). El agente del orden público debe relacionar el comportamiento de la persona que tiene ante sí con el conocimiento de los usos y las costumbres de los infractores con los cuales el policía está familiarizado, máxime cuando se trata de delitos comunes de alta incidencia. Id.
III
Conducir un vehículo en estado de embriaguez o bajo los efectos de sustancias controladas representa un peligro para nuestra sociedad. Con ello en mente, la Asamblea Legislativa aprobó la Ley Núm. 132-2004, la cual introdujo varias enmiendas a la Ley Núm. 22-2000, conocida como la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 5001 et seq.; Pueblo v. Figueroa Pomoles, 172 D.P.R. 403, 420 (2007). De esa manera, la Asamblea Legislativa reafirmó la política pública a favor de la seguridad pública y tuvo el firme propósito de evitar muertes en las carreteras, ocasionadas por conductores en estado de embriaguez. Íd.
En conformidad con la aludida política pública, y en lo pertinente, el Art. 7.09 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 5209, dispone que “toda persona que transite por las vías públicas de Puerto Rico con-duciendo un vehículo... habrá prestado su consentimiento [para] someterse a un análisis químico o físico de su san-gre, o de su aliento,... así como una prueba inicial del aliento a ser practicada en el lugar de la detención...”. Un agente del orden público tiene autoridad para detener al- *275 gún vehículo que transite por la vía pública si tiene moti-vos fundados para creer que el conductor ha cometido al-guna violación a la ley. Art. 10.22 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 5302. Luego de que el agente informe el motivo de la detención y las violacio-nes en que aparentemente incurrió, el conductor deberá mostrarle todos los documentos que debe llevar consigo o en el vehículo, según lo dispuesto por ley. Íd.
El Art. 7.02 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 5202, “incorporó el lenguaje de ‘ilegal per se’ para establecer concretamente la ilegalidad del acto de conducir un vehículo de motor cuando el contenido de alcohol en la sangre del conductor es de 0.08% o más, según surja tal nivel o concentración del análisis químico o físico de su sangre, o de su aliento”. Pueblo v. Montalvo Petrovich, supra, pág. 944. De esa forma, el nivel de alcohol en la sangre no es solo un elemento probatorio, sino que es causa suficiente para concluir que la persona se encuentra bajo los efectos de bebidas embriagantes, en violación a la Ley de Vehículos y Tránsito de Puerto Rico. Íd.; Pueblo v. Figueroa Pomales, supra. Véase además Pueblo v. Tribunal Superior, 84 D.P.R. 392 (1962).
En atención a lo antes expuesto, y en conformidad con el Art. 7.09(g) de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 5209(g), el Departamento de Salud creó el Reglamento Núm. 6346 de 17 de septiembre de 2001 (Reglamento del Secretario de Salud Núm. 110 de 14 de septiembre de 2001), con el objetivo de regular la toma de pruebas científicas para determinar la concentración de alcohol y otras sustancias en la sangre.(9) Este reglamento *276 fue posteriormente sustituido por el Reglamento Núm. 7318, supra, el cual conserva similar propósito.(10)
En lo pertinente al caso de autos, el Reglamento Núm. 7318, supra, dispone que “antes de realizar una prueba con el Intoxilyzer, la persona intervenida se mantendrá bajo observación por un período mínimo de veinte (20) minutos, contados a partir de la hora de la intervención, para asegurarse de que no existe alcohol residual en su boca al momento de efectuarse el análisis”, que pueda afectar la corrección de la prueba. Art. 8.14 del Reglamento Núm. 7318, supra, pág. 11. Este reglamento define “alcohol residual” como la “ [c] antidad de alcohol que permanece en la mucosa de la boca por algún tiempo después de haberse ingerido alcohol, bien se encuentre en forma líquida o en forma de vapor”. Art. 4.03 del Reglamento Núm. 7318, supra, pág. 2. Durante los 20 minutos de observación, el agente debe evitar que el individuo fume, ingiera alimentos o se provoque vómito. Si ello ocurre, deberá esperarse 20 minutos adicionales. Art. 8.15 del Reglamento Núm. 7318, supra. Estas normas aplican también a las pruebas preliminares de aliento realizadas con el Aleo-Sensor. Art. 8.23 del Reglamento Núm. 7318, supra.
En estrecha sintonía con esta controversia, en Pueblo v. Montalvo Petrovich, supra, dos agentes del orden público llegaron a una escena luego de ser alertados de la existen-cia de un accidente de tránsito en el cual una persona quedó gravemente herida y otras dos perdieron la vida. El conductor que supuestamente provocó el accidente, Sr. Gary Montalvo Petrovich, se encontraba fuera de su vehículo. Los policías se acercaron a él y le preguntaron si era el conductor del automóvil. El señor Montalvo Petro-vich respondió afirmativamente. Se le pidió que mostrara su licencia de conducir y la licencia del vehículo, y así lo *277 hizo. El conductor caminaba y se expresaba de forma ade-cuada y fue cooperador en todo momento. Justo cuando éste entregó los documentos solicitados, un policía alegó percibir olor a alcohol. Sin dilación, los agentes le pregun-taron qué había sucedido. El conductor manifestó volunta-riamente que estaba en una fiesta y que había consumido varias copas de vino. Sin haberle practicado la prueba de Aleo-Sensor, fue puesto bajo arresto y trasladado al cuartel. Allí, un agente le realizó la prueba de aliento con el instrumento Intoxilyzer 5000, la cual arrojó un resul-tado de .08 por ciento de alcohol, el máximo permitido por ley. No transcurrieron más de 15 minutos desde que los agentes intervinieron en la carretera con el conductor hasta que se le realizó la prueba de aliento en el cuartel.
Ya presentadas las denuncias y decretada la causa probable para arresto y para acusación, la defensa solicitó la supresión de la evidencia científica. No cuestionó los moti-vos fundados de los agentes para trasladar al conductor al cuartel y efectuarle allí la prueba con el Intoxilyzer 5000; tampoco cuestionó que no se le hubiera practicado al en-tonces detenido la prueba de aliento en la carretera con el Aleo-Sensor. Sin embargo, sí disputó el incumplimiento con el periodo reglamentario de observación de 20 minutos antes de la prueba definitiva de aliento, razón por la cual solicitó que se suprimiera automáticamente el resultado de ésta por falta de confiabilidad.
Con ese cuadro fáctico, por voz del Juez Presidente Se-ñor Hernández Denton, en Pueblo v. Montalvo Petrovich, supra, rechazamos establecer una regla de exclusión auto-mática ante cualquier incumplimiento con el procedimiento dispuesto por la regulación de pruebas de aliento. Resolvi-mos claramente que el “tribunal debe determinar —caso a caso— la magnitud de la desviación y el impacto que ésta puede tener sobre la confiabilidad y precisión de la evidencia”. Íd., pág. 959. Si el “incumplimiento es de tal magnitud que a juicio del juzgador la prueba ya no es con- *278 fiable, es deber del tribunal rechazarla”. (Enfasis suprimido). Íd. Lo importante en ese caso es la confiabili-dad de la prueba porque, a fin de cuentas, lo que se persi-gue encontrar es la verdad. Además, en esa ocasión con-cluimos que el Estado debe probar que cumplió sustancialmente con el periodo de observación de 20 minu-tos antes de tomar la prueba de aliento, contados “a partir del momento en que los agentes intervinieron con el acu-sado y estaban en posición de observarlo para poder deter-minar si éste ingirió alimentos, fumó o se provocó [el] vómito”. Íd., pág. 959.
Como en ese caso el Estado no probó haber cumplido sustancialmente con el periodo de observación, circunstancia que crea serias dudas sobre la confiabilidad de la prueba de aliento y afecta significativamente su valor probatorio, resolvimos que la evidencia científica en cuestión era inadmisible en evidencia. No obstante lo anterior, expresamos claramente que “nada impide que el Estado presente otra evidencia para intentar probar que el [imputado] se encontraba bajo los efectos de bebidas embriagantes”.(11) Pueblo v. Montalvo Petrovich, supra, pág. 961. Para ese propósito se debe evaluar, por ejemplo, “el dominio que éste tenía sobre sí mismo, la apariencia de sus ojos, el dominio del habla, el grado de control que ejerció sobre su vehículo hasta el momento del accidente, su estado anímico, así como cualquier otro factor que refleje el estado de sus facultades físicas y mentales”. Íd.
IV
En el caso ante nos, la defensa del señor Caraballo Bo-rrero alega que debe suprimirse el resultado de la prueba *279 de aliento administrada con el Aleo-Sensor porque el agente Vélez Pabón no cumplió con el periodo de observa-ción de 20 minutos dispuesto en el Reglamento Núm. 7318 del Departamento de Salud, supra.
Según mencionado, el referido periodo de observación de 20 minutos tiene el propósito de garantizar un mínimo de precisión y confiabilidad de la prueba que se administra. El incumplimiento con ese tiempo de observación crea se-rias dudas sobre la confiabilidad de la prueba de aliento y mina su valor probatorio. El agente del orden público debe cumplir con ese lapso de observación para asegurarse de que no queden restos de alcohol en la boca del sospechoso que puedan afectar la corrección de la prueba. Para ese fin también debe prestar particular atención a que el sospe-choso no ingiera alimentos, fume o vomite durante el refe-rido periodo. Estos requerimientos son elementales y lo único que exigen es un mínimo de diligencia.
En el caso de autos el agente Vélez Pabón administró la prueba con el Aleo-Sensor a solo 5 minutos de la interven-ción con el conductor. En tan escaso periodo no hay certeza de que en la mucosa de la boca de éste no habiten rastros de alcohol, en forma líquida o en forma de vapor, que pro-voquen resultados científicamente no confiables. Ya en Pueblo v. Montalvo Petrovich, supra, resolvimos que el Es-tado no probó haber cumplido sustancialmente con el pe-riodo de observación al administrar una prueba de aliento a 15 minutos de la intervención con el sospechoso. En el caso de autos el Estado tampoco demostró haber cumplido con el periodo de observación requerido para administrar la prueba preliminar de aliento con el Aleo-Sensor. Por lo tanto, el Tribunal de Primera Instancia actuó correcta-mente al decretar la supresión de esa evidencia, cuyo re-sultado carece de confiabilidad científica.
Por otra parte, la defensa aduce que debe suprimirse también el resultado positivo de la prueba final de aliento efectuada con el Intoxilyzer 5000. Ello, pues entiende que *280 el agente Vélez Pabón derivó los motivos fundados para creer que el detenido se encontraba bajo los efectos de be-bidas embriagantes, de la inadmisible prueba de campo con el Aleo-Sensor. Por ello, arguye que el arresto fue ilegal y que la prueba definitiva con el Intoxilyzer 5000 debe ser suprimida, de acuerdo con la doctrina de los frutos del ár-bol ponzoñoso. Por su parte, el Estado alega que antes de efectuar la prueba con el Aleo-Sensor el agente Vélez Pa-bón ya tenía motivos fundados para creer que el señor Ca-raballo Borrero se encontraba en estado de embriaguez, razón por la cual el arresto fue legal y la prueba posterior con el Intoxilyzer 5000 —que arrojó .175% de alcohol en la sangre y que fue administrada luego de 35 minutos de ob-servación— no debe suprimirse.
De entrada, no hay controversia respecto a que el agente Vélez Pabón detuvo al señor Caraballo Borrero por conducir un vehículo de motor a 85 millas por hora en una zona de 55 millas por hora. Ninguna parte disputa los mo-tivos fundados de esa intervención inicial ni el boleto expe-dido por conducir por encima del límite de velocidad. La controversia se circunscribe en determinar si el agente te-nía motivos fundados para arrestar al individuo antes de efectuarle la prueba de aliento con el Aleo-Sensor.
En este punto debe quedar claro que por medio de las observaciones del comportamiento del conductor o de los signos externos de embriaguez, un agente del orden público puede derivar los motivos fundados para intervenir con éste y requerirle que se realice una prueba de aliento con el Aleo-Sensor o con el Intoxilyzer 5000. Incluso, hemos sostenido ya convicciones por conducir un vehículo de motor en estado de embriaguez dadas tales observaciones. “No debe olvidarse que la comisión [de ese] delito puede establecerse por prueba independiente del resultado de los análisis”. Pueblo v. Zalduondo Fontánez, 89 D.P.R. 64, 71-72 (1963). Véanse: Pueblo v. Cruz Rivera, 88 D.P.R. 332, 335 (1963); Pueblo v. De Jesús Marrero, 88 D.P.R. 154 *281 (1963). Si la conducta y los signos de embriaguez exhibidos por el detenido pueden ser suficientes para sostener una convicción —asunto cuya naturaleza entraña mayores exi-gencias y rigores — , más aún pueden serlo para imprimirle motivos fundados al agente para requerirle al conductor que se efectúe una prueba de aliento en el cuartel.
En el caso ante nos, el agente Vélez Pabón caminó hasta el recién detenido deportivo blanco y le pidió al conductor la licencia de conducir y los documentos del vehículo. Justo cuando el señor Caraballo Borrero bajó la ventanilla de su vehículo para hacer entrega de estos documentos, el agente Vélez Pabón percibió un fuerte olor a alcohol. Esto inquietó suficientemente al policía como para inquirir sobre la causa del hedor etílico. A un tiempo, el conductor intentó enunciar palabras para darse a entender y el agente notó el habla pesada de su interlocutor, quien aceptó haberse dado unos tragos.
Ante el fuerte olor a alcohol, el habla pesada de quien intenta articular palabras y la admisión inequívoca del conductor de que se había dado unos tragos, cualquier persona prudente y razonable puede tener una base razonable para creer que el conductor intervenido conducía un vehículo de motor en probable estado de embriaguez. Precisamente, estas circunstancias fueron las que crearon una sospecha individualizada y justificaron que el agente administrara la prueba de campo con el Aleo-Sensor. Al analizar la información que le constaba al agente y el cuadro fáctico que éste tenía ante sí, resolvemos que esos hechos constituyen un mínimo de información necesaria para creer razonablemente que se ha violado la ley. Véase Pueblo v. Calderón Díaz, supra, pág. 559. Además, concluimos que para efectos de determinar si un agente del orden público tiene motivos fundados para la intervención aquí en controversia, cualquier insuficiencia que pueda tener la descripción del estado de embriaguez ofrecida por el agente queda fortalecida por la admisión voluntaria del conductor a los *282 efectos de que había ingerido bebidas alcohólicas. Véase Pueblo v. Echevarría, 87 D.P.R. 208, 214-215 (1963).
Por lo tanto, aunque el Tribunal de Primera Instancia actuó correctamente al suprimir los resultados de la prueba con el Aleo-Sensor, dicho foro erró al concluir que ello anulaba los motivos fundados del agente para arrestar al conductor. De hecho, en este caso la intervención en cuestión no sería legítima si antes de realizar la referida prueba de aliento el agente no tuviese motivos fundados para detener el vehículo y creer que el individuo se encon-traba bajo los efectos de bebidas embriagantes. En las cir-cunstancias particulares del caso ante nos, los resultados de la prueba con el Aleo-Sensor solo abonaron a los signos de embriaguez que percibió el agente mediante sus senti-dos y a la inequívoca admisión del conductor a los efectos de que había ingerido bebidas alcohólicas.
Aclarado el hecho de la existencia de los motivos funda-dos previo al resultado de la prueba con el Aleo-Sensor, el arresto y traslado del señor Caraballo Borrero al cuartel para efectuarle una prueba definitiva de aliento con el In-toxilyzer 5000 fue legal y razonable. Por lo tanto, no pro-cede la contención de la defensa respecto a la aplicación de la doctrina de los frutos del árbol ponzoñoso. La inadmisi-bilidad en evidencia de los resultados del examen adminis-trado con el Aleo-Sensor, en este caso, no incide con la le-galidad de la intervención ni con la admisibilidad de la prueba con el Intoxilyzer 5000, la cual cumplió con todos los parámetros reglamentarios. Esto es: hubo un periodo de observación de 35 minutos —mayor al tiempo requerido para garantizar un mínimo de precisión y confiabilidad en la prueba— en el cual el agente se aseguró de que el señor Caraballo Borrero no fumara, comiera o vomitara; además, la prueba arrojó un resultado de .175% de alcohol en la sangre.(12) En cuanto a esta segunda prueba, colegimos que *283 hubo un cumplimiento sustancial con los procedimientos y estándares reglamentarios y operacionales para pruebas de aliento, lo cual imprime confiabilidad en el resultado.
V
Por los fundamentos antes expuestos, revocamos la re-solución recurrida y devolvemos el caso al Tribunal de Pri-mera Instancia para que continúen los procedimientos de forma cónsona con lo aquí resuelto.

Se dictará sentencia de conformidad.

 Consignación de hechos probados en la vista de supresión de evidencia, Es-crito en cumplimiento de orden de 23 de septiembre de 2011, Apéndice, pág. 16.

 Escrito en Cumplimiento de Orden de la parte recurrida ante el Tribunal de Apelaciones de 10 de agosto de 2011, Apéndice, pág. 37.

 Id.; Alegato de la parte recurrida, págs. 15-16 y 18; Consignación de hechos probados en la vista de supresión de evidencia, supra, Apéndice, pág. 16.

 Consignación de hechos probados en la vista de supresión de evidencia, supra, Apéndice, pág. 16.

 Íd.

 Ley Núm. 22-2000 (9 L.P.R.A. sec. 5202(a)).

 El referido reglamento también es conocido como el Reglamento del Secreta-rio de Salud Núm. 123 de 28 de febrero de 2007. Fue creado para regular los métodos y procedimientos para la toma y la el análisis de muestras de sangre, orina o de cualquier otra sustancia del cuerpo. Además, se instituyó para adoptar y regular el uso de los instrumentos científicos para la determinación de concentración de alcohol, incluyendo la prueba inicial de aliento y la detección e identificación de drogas o sustancias controladas.

 “Minuta Resolución” del Tribunal de Primera Instancia de 16 de junio de 2011, Apéndice, pág. 60.

 El mencionado Art. 7.09(g) de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 5209(g), faculta al Departamento de Salud para adoptar y reglamen-tar el uso de instrumentos científicos para determinar la concentración de alcohol en la sangre de los conductores detenidos por conducir o hacer funcionar vehículos bajo los efectos de bebidas embriagantes, drogas o sustancias controladas. Tal facultad se extiende al instrumento a ser utilizado por el agente del orden público para hacer la prueba inicial de aliento.

 Este reglamento fue enmendado por el Reglamento Núm. 7805 de 26 de enero de 2010, también conocido como Reglamento del Secretario de Salud Núm. 139 de 20 de enero de 2010.

 Ya hemos resuelto que no es indispensable el resultado de una prueba quí-mica para probar que una persona conduce bajo los efectos de bebidas embriagantes. Véanse: Pueblo v. Zalduondo Fontánez, 89 D.P.R. 64, 71-72 (1963); Pueblo v. Tribunal Superior, 84 D.P.R. 392, 400 (1962); Pueblo v. Cabrera Osorio, 84 D.P.R. 97, 99 (1961) (per curiam).

 No está en controversia que la persona que administró la mencionada prueba estaba cualificada y certificada por el Departamento de Salud y que tal cer- *283 tificación se encontraba vigente al momento de administrar la prueba. Tampoco está en controversia el funcionamiento apropiado del instrumento y que éste fue apro-bado por el Departamento de Salud y certificado y calibrado en conformidad con la regulación aplicable.